Appeal from First District

## AMUSSEN LAND & SECURITIES CO. v. CO-OPERATIVE DRUG CO.

No. 3727.   Decided April 13, 1922.   (206 Pac. 704.)

1. EVIDENCE—JUDICIAL NOTICE TAKEN THAT NO HEAT IS REQUIRED IN BUILDING IN THAT STATE DURING AUGUST. The courts in Utah will take judicial notice that, in the climate of that state, no heat is required for the comfortable occupancy of a building during the month of August.

2. LANDLORD AND TENANT—LETTER BY LESSOR TO LESSEE HELD A WAIVER OF RIGHT TO TERMINATE LEASE. A letter of lessor, concerning lessee's delay in installing a heating plant, stating: "This of course will leave unsettled the matter of damages for failure to install the same during the past winter," *held* a waiver by the lessor of his right to terminate the lease.

Appeal from District Court, First District, Cache County; *J. N. Kimball,* Judge.

Action by the Amussen Land & Securities Company against the Co-operative Drug Company. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*C. H. Hart* and *P. C. Evans,* both of Salt Lake City, for appellant.

*A. E. Bowen,* of Salt Lake City, for respondent.

GIDEON, J.

The appellant, plaintiff below, seeks judgment by this action against the respondent, defendant below: (a) To recover possession of certain premises described in the complaint; (b) special damages for rent on the premises alleged to be unpaid; (c) general damages;; (d) rent for the premises accruing subsequent to the date of forfeiture of the lease

74          SUPREME COURT OF UTAH          [April

Amussen L. & S. Co., v. Co-op. Drug Co., 60 Utah 73

between appellant and respondent; (e) attorney's fees. The respondent denied appellant's right to recover upon any ground, and, in a counterclaim, prayed for judgment against the appellant.

In January, 1918, the appellant and respondent entered into a written agreement whereby appellant let to the respondent, for a period of 10 years, the "ground storeroom" of a certain business block in Logan City, this state, at a stipulated monthly rental. The occupany began March 1, 1918. Among other things, it was provided in the lease as follows:

"The said second party shall make alterations and additions upon the approval and consent of said first party, which changes shall include a new store front and a steam heating plant for said building, to the value and cost of not less than two thousand ($2,000) to be paid as follows: two hundred fifty ($250.00) dollars thereof to be paid by the party of the first part upon the completion of said alterations and two hundred fifty ($250.00) dollars to be paid by the said second party; the said second party to also advance the sum of fifteen hundred ($1,500.00) dollars for said alterations and additions and to be reimbursed by deducting the sum of twenty-five ($25.00) dollars every month during said tenancy from the rent above reserved and agreed to be paid until the full sum of fifteen hundred ($1,500.00) dollars has been reimbursed to the said second party. Before making said alterations or additions the plans therefor shall be first submitted to said first party and its consent or approval obtained in writing.

"That if the rent above reserved or any part thereof shall be unpaid on the day whereon the same is due and payable, and for five days thereafter, or if any default shall be made in any of the covenants herein contained by the party of the second part, its successors or assigns, it shall and may be lawful for the said party of the first part, its successors and assigns, agent or attorney, to take possession of the said demised premises and every or any part thereof with or without legal process, and without giving notice to quit, to re-enter and the same again to repossess and enjoy, as in its first and former estate.

Lessee "to pay and discharge all costs, attorneys' fees and expenses that shall arise from enforcing the covenants of this indenture by the said party of the first part.

"That the said party of the second part will furnish at its own expense * * * except that said second party shall be compensated for the heat furnished the second story of said building as hereinbefore specified.

"That the said party of the first part may, at all reasonable

hours, enter upon the premises and every part thereof for the pur-
pose of inspecting and examining same, and to ascertain whether
said party of the second part is complying with the covenants and
agreements herein contained to be kept and performed by it."

The respondent submitted plans for the alterations of the
front of the building. These plans were approved by appel-
lant, and the alterations made prior to March 1, 1918. The
cost of making these alterations exceeded the estimated cost of
all the improvements mentioned, in the lease. The cost of
this work was in excess of $2,300. No plans were submitted
for the heating plant during the year 1918, if any were ever
submitted. No steam heating plant was installed during the
year 1918. In that year respondent installed a hot air fur-
nace of sufficient capacity to furnish heat for the ground
floor. It appears undisputed, and the court in effect found,
that during the summer and fall of 1918 and during the
winter of 1918 and 1919, conversations regarding the heating
plant were had between the parties to the lease. On or about
June 11, 1919, the appellant, through its attorneys, addressed
a communication to respondent, relating to the installation
of a steam heating plant, as follows:

"Mr. Victor Amussen has placed with us the matter of differ-
ences between his company and yourselves growing out of lease to
the quarters now occupied by you. We take it there is no dispute
that you have failed to comply with your contract in reference to
installing a steam heating system and being entitled to certain de-
ductions from rentals due conditioned upon and in consideration of
the installation by you of the steam heating system. Of course you
are required to do this within a reasonable time and we take it
there will be no question that you have failed to comply with this
part of the contract within a reasonable time. The position of our
client is that not having complied with your contract in this respect
that you are not entitled to deductions from the agreed monthly
rentals and that therefore you are largely in arrears in the pay-
ments of rent. Rather than take steps to forfeit the contract or to
commence litigation, which under the contract would be at your
expense for attorneys' fees, our client is desirous that we should
ascertain what if any settlement of the matter you are willing to
make."

In reply to the above letter, on June 13th, respondent, in
a written communication, advised the attorneys for appellant
that a steam heating plant was at that time being installed.

On the 16th of the same month, in reply to the letter of June 13th, the appellant addressed the following communication to respondent:

"Your favor of June 13th received, giving information that you are now installing a steam heating plant in the building now occupied by you. This of course will leave unsettled the matter of damages to our client for failure to install the same during the past winter. Will you kindly let us hear from you what you are willing to give in adjustment of this matter?"

No further communications appear to have passed between the parties until August 19th of the same year, at which date the appellant served upon the respondent a communication, the substance of which, so far as material, may be stated as follows: It was first stated that the appellant claimed an "aggravated breach" of the lease; first failure to furnish written detailed statements of expenditures or alterations; second, a total failure to install a heating plant as provided in the contract; third, loss of tenant by appellant for failure to provide heating plant; fourth, failure to pay rent at the agreed monthly rental of $150, it being stated that the $25 retained by the respondent was wrongfully retained by reason of failure to make the alterations or install a heating plant, as provided in the lease. Other grounds upon which the forfeiture is claimed are mentioned, but they are not material. In this same communication the appellant advised the respondent of the receipt of a check dated August 9, 1919, for $125, in payment of the rent for that month, but at the same time stated that it had not received or accepted that check, or either of the checks theretofore received by it, in full payment of the rent for the months on which they bore date, but, on the contrary, insisted that there was a balance of $25 per month due and unpaid for each month for which the checks were received. The communication closes as follows:

"An early vacation of the premises in accordance with the election of the lessor to terminate the contract by reason of the various breaches thereof will be appreciated and is required."

The respondent, beginning March 1, 1918, paid monthly to the appellant by check $125 rental deducting the sum of $25,

claimed under the terms of the lease to apply on the cost of making the alterations upon the building. These checks were received regularly and cashed by the appellant until August, 1919. Subsequent to that date the respondent continued to mail a check for $125 each month to appellant. The checks were retained but not cashed. In January, 1920, this action was instituted to recover possession of the premises and to oust the respondent.

The case was tried to the court without a jury. Lengthy findings were made. It will not be necessary, even in substance, to set forth all of such findings. The execution of the lease was admitted and is so found by the court. The court found that, between June 1, 1919, and November 1, 1920, the respondent installed a steam heating plant in the building in controversy, and connected the same with the premises in question; that, at the time of the installation, and at the time of hearing the case, the plant was in good condition and of sufficient capacity to heat the whole of the building described in the lease; that the cost of installing the said plant was in excess of $500, which was paid by the respondent; that the appellant knew at the time that the heating plant was being installed; that, during the time of the installation on August 19, 1919, appellant, by its attorneys, gave written notice to the respondent of a forfeiture or termination of the lease. The court further found that, beginning March 1, 1918, and including August 1, 1919, the respondent paid by check in full payment of the rental of the premises $125 monthly; that all of such checks were received and cashed by the appellant, except the check for the month of June, 1919, which apparently was lost. Findings were also made that appellant had not paid to the respondent the sum of $250 agreed by it to be paid as a part of the cost of the alterations and additions made upon the building; that the respondent did not submit plans for the heating plant installed; that the contract did not provide for any particular kind of a heating plant, beyond the fact that the same should be of sufficient capacity to heat the whole of the building in which the demised room was situated; that the appellant at no time prepared the up-

stairs rooms for receiving the heat from the heating plant and never demanded of the respondent to furnish steam heat for said upstairs rooms. The court found that the appellant had at no time lost any tenant by reason of the absence or want of heat and that it had not, during any time since making the lease suffered any loss of rent by reason of the failure to install the heating plant; that the failure of the respondent to install the heating plant prior to the date that it was installed did not render the second story of the building untenable and did not deprive the appellant of the rental value thereof or any sum whatever; that a period of from 60 to 90 days was a reasonable time within which to install the heating plant.

Conclusions of law followed the findings. Judgment was entered thereon and plaintiff prosecutes this appeal.

It cannot be disputed that the respondent failed to install the heating plant within a reasonable time. The court found that from 60 to 90 days was a reasonable time for the installation and admittedly a steam heating plant was not installed for over one year. It is, however, specifically found by the court that such delay in no way rendered the upper story of the building untenantable and that the appellant suffered no damage by reason of such breach.

We do not consider it necessary to pass upon many of the questions discussed in the able briefs of counsel. While the court's findings are to the effect that the installation of the heating plant was completed some time between June 1, 1919, and November 1, 1920, it is in the testimony, and it is not disputed, that the heating plant was sufficient in the month of October to furnish heat not only for the rooms mentioned in the lease but for the other parts of the building as well. The court can take judicial notice of the fact that, in this climate, no heat is required for the comfortable occupancy of a building during the month of August. It would, in the judgment of this court, and it was evidently the view of the district court, be inequitable to permit the appellant to insist upon a forfeiture after its communication of June 16th. The effect of that letter was to advise the respondent to go forward with the installation of the steam

heating plant and that no insistence would be had upon the right to terminate the relationship of landlord and tenant, if any such right had existed, but that appellant would look to the respondent to compensate it for any loss, by reason of the breach up to that time. With the information contained in that letter, the respondent had a right to continue with the installation of the heating plant and with the assurance that no forfeiture would be claimed by reason of any previous breach in that regard. Whatever may have been the rights of the appellant, under the law, to insist upon a forfeiture for a continuing breach after such breach was a known fact, this letter or communication of June 16th could have only the significance of saying that any forfeiture under a breach based upon the failure to install a heating plant was thereby waived and would not be insisted upon, if the heating plant should later be installed or the defect corrected. Any other holding would do violence to the broad equitable principle, recognized by all courts, that a party litigant cannot mislead his adversary and afterwards take advantage of failure to act or to desist from acting under assurances that no advantage would be taken of a former breach of the contract. Clearly, the respondent had a right to assume, and to act upon the assumption, that the only claim that the appellant would make for failure to install the heating plant would be such damages as it would be entitled to recover in a suit brought for that purpose.

The judgment of the district court is affirmed with costs.


CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.