## FLOWERS et al. v. WRIGHTS, Inc.

No. 7445. Decided February 20, 1951. (227 P. 2d. 768.)

See 52 C. J. S. Landlord and Tenant, sec. 502. Construction of lease giving landlord percentage of lessee's profits, see note 170 A. L. R. 1113. See, also, 32 Am. Jur. 384.

*Franklin Riter, LaVar E. Stark,* Salt Lake City, for appellants.

*Howell, Stine & Olmstead,* Ogden, for respondent.

WOLFE, Chief Justice.

This action was commenced by the appellants, plaintiffs below, to recover the sum of $28,880.73 allegedly due them under a lease with the respondent, defendant below. From a judgment in favor of the respondent, the appellants prosecute this appeal. The parties will hereafter be referred to as they appeared in the lower court.

On February 11, 1939, Mrs. Allie C. Baker, mother of the plaintiffs, entered into a written lease with the defendant whereby Mrs. Baker leased to the defendant a lot and store building erected thereon in Ogden, Utah, for a term of five years commencing on February 15, 1939,

and terminating on February 15, 1944. So far as it is pertinent here, the lease provided:

"And said lessee, in consideration of the leasing of the premises aforesaid by said lessor to it, covenants to pay as the annual rental for said premises three (3) per cent of the *total sales volume of the lessee,* provided, however, that the lessee agrees to pay a minimum rental of Two Thousand Nine Hundred and Forty Dollars (2,940.00) per year, payable in monthly installments. * * * *

"It is understood and agreed that the books of said lessee shall be open for inspection to verify the annual sales reported by it.

"And the lessee hereby covenants as follows:

"(1)  *  *  *

"(2)  *  *  *

"(3) That neither the lessee nor its legal representatives will let or underlet said premises, or assign this lease, without the written assent of the lessor first had and obtained thereto, *except that said lessee may sublet space in the said premises to departments selling other lines of merchandise than those offered for sale by the lessee, that is to say, women's coats, suits, furs and dresses.".* (Italics added.)

On or about June 25, 1941, the parties entered into an agreement extending the term of the lease for an additional five years, i. e., from February 15, 1944, to February 15, 1949. Subsequent to the execution of this agreement Mrs. Baker conveyed by warranty deed the leased premises to the plaintiffs, her daughters, subject, however, to the occupancy of the defendant under the lease.

During the ten-year period which the defendant occupied the leased premises, it conducted a retail merchandising business thereon, selling women's coats, suits, furs and dresses. It also, as permitted by the lease, sub-let space in the store to others who sold women's shoes and millinery. During the term of the lease, the defendant paid the percentage rental on the basis of its total sales volume only, exclusive of the total sales volume of persons to whom it had sub-let space in the store to sell hats and shoes. Up until the final month of the term of the lease, both Mrs. Baker and the plaintiffs accepted percentage rentals com-

puted on the foregoing basis, although it is not clear that they so understood the basis for computation of the rent paid them. When the percentage rental for the final month and a half of the term of the lease (i. e. from January 1 to February 15, 1949) was tendered, the plaintiffs refused to accept the amount tendered and commenced this action, claiming the defendant should have been paying rent on the basis of the combined total of its sales and the sales of the sublessees who sold shoes and millinery in the defendant's store, and that the defendant owed an additional $28,880.73 as percentage rentals.

. The sole question for our determination is what construction should be given to the phrase in the lease reading: "said lessee  *  *  *  covenants to pay as the annual rental three (3) per cent of the total sales volume ▓ of the lessee."

: At the trial below, in an effort to prove that the defendant treated the sales of the shoe and hat departments as its own sales, counsel for the plaintiffs offered to prove the following facts by the testimony of witnesses but the court refused to allow the testimony in evidence: (1) that all cash sales in the shoe and hat departments were paid to and taken into the accounts of the defendant and all credit sales in those departments were carried on the accounts of the defendant and the purchasers were billed by it; (2) that the defendant assumed all risks in connection with sales of hats and shoes on credit and the sublessees did not assume such risks; (3) that settlement between the defendant and the operators of the shoe and hat departments was made on the basis of gross sales of those departments without reference to the collectibility of the credit sales; (4) that the employees of the shoe department, for part of the time at least, were carried on the payroll of the defendant and it withheld federal income and old age benefit taxes from the wages of those employees and remitted the taxes to the proper governmental agencies; (5) that the defend-

ant paid the employers' old age benefit tax on the wages of the employees of the shoe department as well as state unemployment insurance contributions; and (6) that the defendant paid the premium on workmen's compensation carried on the shoe department employees.

Assuming but not deciding that the lower court erred in refusing to allow testimony of the aforementioned facts in evidence, the defendant was not prejudiced because granting such testimony to be true, the trial court nevertheless correctly construed the contract and properly denied the plaintiff's claim that under the lease the defendant was obligated to pay a percentage rental based upon the gross sales of the operators of the shoe and millinery departments as well as upon its own sales.

First, the express words of the lease read "total sales volume of the lessee" and not "total sales volume of the lessee and sublessees of space." At the time the lease was executed it is evident that the parties contemplated that sales would be made by sublessees of space in the store because the parties expressly provided that the lessee (defendant) could sub-let store space for the sale of non-competitive merchandise. Yet it is significant that the parties having that fact in mind specifically limited the basis for computation of the percentage rental to the "total sales volume of the lessee." In support of their contention that the phrase of the lease in question should not be literally construed, the plaintiffs refer us to the case of *Cissna Loan Co.* v. *Baron,* 149 Wash. 386, 270 P. 1022, 1023. In that case the lease under consideration provided that the rental was to be 2½ per cent of the gross sales of the "department store business conducted and maintained * * * 'in said [leased] building.'" After taking occupancy of the building, the lessee moved two important departments of his store into an adjoining building not owned by the lessor. Openings were cut in the wall of the building to permit customers to move freely from one building to the

other without going out into the street. The court held that sales from the two departments in the adjoining building were to be included in computing the percentage rental, although those sales were not made literally in "said [leased] building" as specified in the lease. The court was influenced by the fact that the advertising and business administration for all departments was conducted in the leased building.

While we do not disagree with the decision of the court in *Cissna Loan Co.* v. *Baron,* supra, it is readily apparent that that case and the instant case are distinguishable. In the Cissna case there is nothing in the language of the lease which reveals that when it was executed, the lessee was contemplating moving or that he ever would move any of his departments out of the leased premises. In fact, it was not until four years after the commencement of the term of the lease that such change took place. Because the parties had no such contingency in mind when they executed the lease, it cannot be said that by wording of the lease they intended to specifically cover and provide for that situation.

But in the instant case, it appears from the very language of the lease that the parties contemplated that the lessee would sub-let departments of non-competitive merchandise and yet in the light of such knowledge they chose to expressly provide in the lease that the rent should be based upon the lessee's sales—not upon the total sales of the lessee and sub-lessees. While we must enforce the lease in accordance with the intent of the parties, we must find that intent from the language of the lease itself, especially when it is clearly expressed.

There is another persuasive reason why we believe the parties to the lease intended that the percentage rental be based upon the total sales of the defendant only. The

lease provided that space could be sub-let by the defendant to persons "selling other lines of merchandise than those offered for sale by the lessee, that is to say, women's coats, suits, furs and dresses." Were it the parties' intent that the lessor receive a percentage rental based upon the total sales of all merchandise sold within the building irrespective of whether the sales were made by the defendant or by one of its sublessees of space, it seems strange that they would have expressly provided that space could be sub-let in the store only for the sale of non-competitive lines of merchandise. There would be no reason to so limit the right to sub-lease space were the lessor to receive a percentage rental based upon the total sales made in the building. Doubtless the reason why the lessee's right to sub-let space was so restricted was to prevent the lessee from using the right to sub-lease space as a device to reduce the percentage rental which would ordinarily accrue to the lessor. Numerous cases are cited by the plaintiffs to the effect that a lessee cannot use the authority to sub-let as such a device. With that principle, we are in complete accord. But by allowing others to conduct shoe and millinery departments on the leased premises the defendant did not in any way jeopardize the lessor's right under the lease to receive a percentage rental on its total sales. The lease itself expresses that the parties contemplated that the defendant would offer for sale women's coats, suits, furs and dresses. This the defendant did at all times. Instead of infringing upon the plaintiff's right to a percentage rental, the sub-leasing of the shoe and millinery departments may have actually enhanced sales in departments operated by the defendant by drawing potential customers into the store.

The plaintiffs contend that under the construction given the lease by the lower court, and in which construction we concur, the defendant could sub-lease substantially all the space in the store to others and retain for itself

only a small area where it could conduct a small and inferior business for the sale of women's coats, suits, furs and dresses, thereby minimizing its business and almost entirely emasculating the provision of the lease providing for the rental to be based upon the volume of the lessee's sales. A shorter answer to this contention is that the defendant has not endeavored to do any such acts. The plaintiffs have not questioned its good faith in any respect. From 1940 to 1945 the defendant's sales volume grew steadily until in 1945 it was over three times greater than in 1940. In 1946 and 1947, the defendant's sales volume decreased but in 1949 it again was on the increase. Had the defendant changed the character of its business or dismembered it under the guise of sub-leasing space to others in order to effectuate a reduction in the percentage rental, we would have a different case. But clearly that problem is not involved here.

The judgment below is affirmed. Costs to the respondents.

WADE, LATIMER, McDONOUGH and CROCKETT, JJ., concur.