WOODLAND THEATRES, INC., a corporation, Plaintiff and Appellant,

v.

ABC INTERMOUNTAIN THEATRES, INC., a corporation, and Plitt Intermountain Theatres, Inc., a corporation, Defendants and Respondents.

Nos. 14440, 14441.

Supreme Court of Utah.

Jan. 26, 1977.

Daniel L. Berman and Richard D. Burbidge of Berman & Giauque, Salt Lake City, for plaintiff-appellant.

L. R. Gardiner, Jr., Roger P. Christensen, Salt Lake City, for defendants-respondents.

MAUGHAN, Justice.

On appeal a summary judgment against plaintiff, hereafter lessor; and in favor of defendants, hereafter lessee. We affirm. Costs to lessee.

Lessor brought two actions. Both for the purpose of enforcing a declared forfeiture of lessee's interest in property, upon which was conducted a drive-in movie theater business. The first action was in unlawful detainer. Lessor specifically asserted breaches of the lease, by the lessee. This action was filed on August 21, 1974. Lessor alleged all breaches had occurred prior to June 26, 1974, and on that date a notice of default was sent to lessee. On August 1, 1974, lessor exercised its option to declare the lease annulled, as of August 19, 1974. It was further alleged despite the breaches, and service of notice of default and to quit, lessee remained in possession; thus was guilty of an unlawful detainer. Lessor prayed for treble damages, after August 19, 1974.

On September 24, 1974, lessor filed a complaint entitled "Breach of Lease and Termination of Lease." Therein lessor alleged the same breaches set forth in its

previously filed action. In addition, that pursuant to the lease, it was guaranteed a minimum annual lease payment; and was further entitled to receive a percentage of gross admission and concession receipts. Also, lessee was obligated to improve and to maintain the premises and equipment in a good state of repair; to operate the theater in a prudent, diligent, and businesslike manner; so as to maximize the revenue with a resulting benefit to lessor by reason of an increment in the gross proceeds.

The foundation of this allegation is the claim lessee had the duty to conduct the business in a manner which would produce revenues above a stated maximum. Thus, entitling lessor to certain percentages of the additional revenues. A breach of this obligation was alleged.

It was prayed the lease be declared annulled, as of August 19, 1974; defendant be enjoined from occupying and operating the theater premises; lessor be awarded $380,-000, as damages, for loss of the additional revenues.

The two cases were consolidated. After extensive discovery, lessee filed a motion for summary judgment, in both actions. The thrust of the motion was: acceptance of rent with knowledge of the breaches waived the breaches, as a matter of law, and lessee had no duty, under the lease, to maximize revenues.

This motion was granted, the court ruling all breaches of the lease asserted by lessor were waived, by its acceptance of rent; and lessee was entitled to judgment as a matter of law.

On appeal, plaintiff contends the trial court erred in ruling as a matter of law that plaintiff, by accepting rent, waived defendants' forfeiture of the leasehold and breaches of the lease agreement.

 A brief review of the sequence of events is essential to understand the instant action. Lessor returned tendered rental payments for July through December of 1974. One action was filed in August 1974, and the other in September of 1974. In both actions lessor asserted it had declared the lease annulled, as of August 19, 1974. In December 1974, lessor accepted all rental payments it had previously rejected. Thereafter, lessor has accepted regular rental payments, and lessee was current in its rental payments, at time of judgment. Indeed, in response to lessee's request for admissions, lessor admitted "it accepted said checks *as payment for rent* for the subject months but does not in any respect admit that said acceptance constitutes a waiver of any claims for breach of the subject lease." (Emphasis supplied.) This unilateral reservation avails lessor nothing.[1]

 In the instant case, lessor has admitted it accepted the checks *as payment for rent.* Yet it asserts the inconsistent position there was no subsisting relationship of landlord and tenant.

This contested principle was resolved long ago, in *Brigham Young Trust Co. v. Wagener.*[2] This court there explained a party cannot be allowed to avoid the contract, and then treat it as subsisting; nor treat it as subsisting, and afterwards be permitted to avoid it to the other party's injury. This court there held:

> . . . "Where, by reason of a breach of a condition, a lease becomes forfeited, the lessor is entitled to recover possession. He waives that right by the acceptance of rent. He cannot accept the rent, and at the same time claim a forfeiture of the lease." [Citations][3]

---

1. "A forfeiture terminates the relation of landlord and tenant and, in the absence of a covenant of indemnity, the tenant's duty to pay rent." 1 American Law of Property (1952), § 3.94 pp. 381–382; also see 3A Thompson On Real Property (1959 Replacement), § 1343, p. 620. After a forfeiture is declared and the landlord is entitled to possession, he may recover damages from the tenant who thereafter remains in possession. Generally, the damages recoverable from the tenant are the reasonable rental value of the premises. See *Pingree v. The Continental Group of Utah,* Utah, 558 P.2d 1317 (1976).

2. 13 Utah 236, 44 P. 1030 (1896).

3. at p. 241 of 13 Utah, at p. 1031 of 44 P.

For a further and extensive explanation of this principle see *Jones v. Della Maria.*[4]

The following admonition is expressed in 3A Thompson On Real Property (1959 Replacement), Sec. 1328, p. 576:

A landlord seeking enforcement of a forfeiture must take care not to do anything which may be deemed an acknowledgment of a continuation of the tenancy. Any act done by a landlord knowing of a cause for forfeiture by his tenant, affirming the existence of the lease and recognizing the lessee as his tenant, is a waiver of such forfeiture. . . .

If the lessor receives rent from the lessee after full notice or knowledge of the broken covenant or condition, he cannot thereafter assert his rights of forfeiture given by the lease, notwithstanding express denial of the waiver upon acceptance of the rent.[5]

In the current matter, the acceptance of rental payments, by lessor after the action was filed precludes its right to enforce forfeiture.[6]

Lessor further contests the ruling of the trial court insofar as it has the effect of barring its right to recover damages for breach of the covenants by accepting rental payments. This point is valid. However, it makes a difference what damages one seeks.

In *Wollard v. Schaffer Stores Co.*[7] the plaintiff was deemed to have waived his right to forfeit the lease by accepting rent from defendant. This did not deprive him of all his contractual rights under the lease. Defendant had violated a covenant to make no structural changes without the landlord's written permission. The cost of restoration of the building to its prior condition was $750 and the court awarded plaintiff that sum.[8]

Lessor's claim for damages drives directly to violation of an asserted implied covenant. It is contended the trial court erred in ruling, as a matter of law, there was no implied covenant on the part of lessee; to operate the theater in a prudent and businesslike manner. It is argued lessee permitted the physical plant to deteriorate, thus adversely affecting the patronage of the theater, limiting the receipts, which lessor would have received under the percentage provisions.

Under the lease lessor received a minimum annual guaranteed rental of $32,500, payable in monthly installments of $2,708.33. In addition, it could receive 15% of the gross admission receipts, in excess of $183,333; and 15% of the gross concession receipts, in excess of $65,000.

In *Percoff v. Solomon*[9] the lessor urged, under a lease, which provided for payment of rent based on gross receipts, there was an implied covenant requiring the tenant to conduct the business at the leased premises, with diligence, for the mutual benefit of all parties; and in such a manner as to produce rental in excess of the minimum rent. The court classified the cases dealing with percentage leases. In the first group: leases contained express covenants which, in effect, provided the lessee would use its best efforts to obtain and maintain the highest volume of business on the premises, or would keep the store well stocked with merchandise, and actively engage in selling it, during the term of the lease. In the second group: no minimum rental was provided, the lessor was completely dependent on the amount of gross receipts from sales and collections for any rent. In the third

**4.** 48 Cal.App. 171, 191 P. 943 (1920).

**5.** Id. 1976 Supplement, p. 74.

**6.** *Reeves v. Baker*, 270 Or. 837, 530 P.2d 30 (1974); *Bedford Investment Co. v. Folb*, 79 Cal.App.2d 363, 180 P.2d 361 (1947).

**7.** 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262 (1936).

**8.** See 3A Thompson On Real Property (1959 Replacement), § 1328, p. 581; *Amussen Land and Securities Co. v. Co-operative Drug Co.*, 60 Utah 73, 206 P. 704 (1922).

**9.** 259 Ala. 482, 67 So.2d 31, 38 A.L.R.2d 1100 (1953).

group: minimum rent under the lease was nominal rather than in itself a substantial and adequate rental for the demised premises. The court observed no case had come to its attention; which had held, as a matter of law, under a percentage lease with a guaranteed substantial minimum rental; a covenant, such as urged by the lessor, had been implied.

That court said:

An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so; or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. [Citation] [10]

In *Flowers v. Wrights, Inc.*,[11] this court emphasized:

. . . While we must enforce the lease in accordance with the intent of the parties, we must find that intent from the language of the lease itself, especially when it is clearly expressed.

Here, the lease does not contain any express covenant, whereby lessee promises to use its best efforts to obtain and maintain the highest volume of business. The minimum annual guaranteed rental of $32,500 may not be deemed nominal. Lessor has cited the covenants providing for im-provements and maintenance of the premises as a basis to support its claim of an implied covenant. However, these covenants are consistent with the requirements of the lessor to have preserved and improved its reversionary interest in the premises.

The lease instrument itself throughout its paragraph 2, by its express provisions, clearly negates the implied covenant urged by lessor. In describing the designated percentage of the gross admission receipts and gross concession receipts, as well as the means of computation and time of payment, the contract repeats four times the term "if any" to indicate there was no express representation the lessee would conduct a sufficient volume of business to guarantee payment. If there were any doubt as to the intention of the parties an express provision of the instrument clarifies the matter.

The lessee in no way guarantees that there shall be any percentage rental earned and due and payable under the terms and conditions of this Lease.

An express covenant on a given subject matter excludes the possibility of an implied covenant of a different or contradictory nature.[12] The lessor's asserted implied covenant cannot be sustained, in view of the foregoing express provision.[13]

ELLETT and CROCKETT, JJ., and GORDON R. HALL, District Judge, concur.

HENRIOD, C. J., does not participate herein.

WILKINS, J., having disqualified himself, does not participate herein.

---

**10.** at p. 40 of 67 So.2d.

**11.** 119 Utah 378, 383, 227 P.2d 768, 771 (1951).

**12.** *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 424 P.2d 541 (1967).

**13.** Also see *Dickey v. Philadelphia Minit-Man Corp.*, 377 Pa. 549, 105 A.2d 580 (1954); *Masciotra v. Harlow*, 105 C.A.2d 376, 233 P.2d 586 (1951); *Ready v. Texaco, Inc.*, Wyo., 410 P.2d 983, 28 A.L.R.3d 1419 (1966).