[Dent v. Long.]

# .Dent *v.* Long.

*Bill in Equity for Rescission of Contract, on grounds of Fraud and Undue Influence.*

1. *Rescission of contract on grounds of fraud, undue influence, and mental incapacity.*—A conveyance of a large tract of land by an aged woman will not be set aside and cancelled in equity, at the instance of her children, on the grounds of her mental incapacity, and fraud and undue influence on the part of one of her sons, acting at the instance of the purchaser, when the evidence shows that the purchaser paid full value, and had no knowledge or notice of any fraud or undue influence exerted by the son, whose testimony as to his statements to his mother is disproved in material particulars; and it further appears that the mother, though partially paralyzed, fully understood the terms of the contract, and always expressed her satisfaction with it.

2. *Same; laches, and ratification.*—If the children, in such case, have any right to rescind the contract after their mother's death, they will be required to act with promptness, and to place the purchaser *in statu quo;* and where they delay in filing their bill for six years, during which time the value of the lands has been greatly increased by railroads running through them, and valuable improvements erected by the purchaser, and it further appears that the lands received in exchange, as part consideration, have been sold by the mother's administrator, and some portions bought by the children, a rescission is properly refused.

APPEAL from the Chancery Court of Walker.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 3d March, 1887, by Joseph H. Dent and others, children of Mrs. Eliza Dent, deceased, against B. M. Long and W. B. W. Dent, the latter being a brother of the complainants; and sought the rescission of a contract between Mrs. Dent and said Long, and the cancellation of a conveyance of a large tract of land executed by her to him, on the ground of her mental incapacity at the time, and fraud and undue influence on the part of said W. B. W. Dent, at the instance of said Long. On final hearing, on pleadings and proof, the chancellor dismissed the bill, and his decree is now assigned as error.

RICE & WILEY, for appellants.—(1.) If the csae was presented only between W. B. W. Dent and his mother, there could be no doubt of her right to relief.—*Boney v. Hollingsworth,* 23 Ala. 698; 2 Pom. Equity, § § 962–63; *Malone v. Kelly,* 54 Ala. 538; *Archer v. Hudson,* 7 Beav. 551; *Lee v.*

[Dent v. Long.]

*Lee*, 71 N. C. 139; *Lee v. Pearce*, 68 N. C. 76; *Waddell v. Lanier*, 62 Ala. 347; 2 J. J. Mar. 341; 11 Wheat. 103; 94 U. S. 506; 19 Nebr. 293, 436. (2) Long had knowledge of the undue influence exercised by W. B. W. Dent over his mother, and knew that it was exercised in his behalf; and he can not be allowed to retain any benefit he may have derived from the transaction.—*Noble v. Moses Bros.*, 81 Ala. 530; *Martin v. Martin*, 35 Ala. 566; *Thompson v. Lee*, 31 Ala. 292; *Reese v. Kirk*, 29 Ala. 410; *Comstock v. Comstock*, 57 Barb. 453; 11 Wall. 233.

SMITH & LOWE, *contra*.—(1.) The mental capacity of Mrs. Dent, at the time of her sale and conveyance to Long, is abundantly established by the evidence. (2.) W. B. W. Dent is the only witness who testifies to any fraud practiced by him on his mother, and his testimony is contradicted in many material particulars. Even if he did perpetrate any fraud or exert any undue influence on his mother, it can not be imputed to Long, who did not participate in it.—*Moog v. Strang*, 69 Ala. 98; *Moses v. McDade*, 58 Ala. 211; *Wood v. Craft*, 85 Ala. 262. (3.) If any fraud was practiced, no injury resulted, since Long paid full value for the land, and more than it had been offered for to other persons. Fraud and damage must concur to give a cause of action.—*Jordan v. Pickett*, 78 Ala. 340; 1 Story's Equity, § 203; *Bigelow on Fraud*, 277–8. (4.) A contract will not be rescinded when the parties can not be placed in *statu quo*.—*Barnett v. Stanton & Pollard*, 2 Ala. 189: *Gallagher v. Witherington*, 29 Ala. 420; *Eureka Co. v. Edwards*, 71 Ala. 248. (5.) The right to rescind has been lost by ratification and *laches*.—8 A. & E. Ency. Law, 653; *James v. James*, 55 Ala. 525; 93 U. S. 55; 62 Ala. 401; 77 Ala. 158.

CLOPTON, J.—On April 2, 1879, Eliza Dent and W. B. W. Dent executed to B. M. Long a conveyance of the lands mentioned in the bill, situate in Walker county, Alabama, upon the expressed consideration of six thousand dollars. Eliza Dent died in June, 1881. Appellants, who are her children and heirs, by the bill seek the rescission of the contract of sale, and cancellation of the conveyance, on the alleged grounds, that Mrs. Dent was mentally incapable of making a contract, and that her mental deficiencies were unduly acted upon by W. B. W. Dent, her son, who, the bill alleges, was subject to the control and influence of Long, and was his agent or instrument in procuring the conveyance. The specific allegations are, substantially, that Long caused Dent

to be arrested on a criminal charge, who, having received information while under arrest, in the custody of the officer, that his mother, who lived in Newman, Georgia, was in a dying condition, and that he must hasten to Georgia if he expected to see her alive, went to Long, and informed him of his distressing condition. Long, seeing the opportunity to obtain the lands, which he had long desired, proposed to Dent to arrange for him to go to Georgia, by suspending the criminal prosecution, and becoming surety for his appearance, if he would procure from his mother a conveyance of the lands to him, in consideration of five thousand dollars, taking in part payment certain lands in Carroll county, Georgia, owned by Long; and if Dent would also convey the land which he owned, he would surrender all the claims he had against him, and permanently suspend the prosecution. Dent went to Georgia, represented to his mother his arrest and prosecution, and urged her to come to his relief by making the conveyance, being the only mode by which he could escape conviction and disgrace; and also that Mrs. Dent, with a mind so enfeebled by old age and sickness, as to be unable to contract intelligently, and a will so impaired that she could not resist the appeal of her son, was thereby induced to execute the conveyance.

The testimony is very voluminous, covering eight hundred and seventy pages of transcript paper, and conflicting in many respects. A critical review of it would unnecessarily extend this opinion, and serve no useful purpose in the decision of other cases. We shall, therefore, be content to state our conclusions. While the opinions of the witnesses greatly vary as to the mental condition of Mrs. Dent, a variance probably produced by her physical and mental condition at different times, it does not appear from the evidence that, at the time of making the conveyance, she was mentally incapable to contract. The facts of calling upon Mrs. Wood, one of the complainants, to witness the deed; informing Joseph H. Dent, another of the complainants, several hours afterwards, of what she had done; giving him the notes which Long had given for the unpaid purchase-money, saying that, if she kept them, W. B. W. Dent would get them from her; and telling, sometime afterwards, the witness Clark, who is unimpeached and uncontradicted, though Mrs. Wood was present, that she had sold her land in Alabama, assigning as her reason that the lands in Alabama were remote, yielded no income, and she had to send money to pay the taxes, while those in Georgia, which she received in exchange, were near, and would yield an income, manifest that she understood the character of the transaction, and comprehended the nature of the conveyance, and the consequences which would ensue.

[Dent v. Long.]

In order to prove undue influence, complainants rely entirely upon the testimony of W. B. W. Dent, who testifies, that he told his mother that he was under arrest, and that his only chance to escape criminal prosecution was to consummate the trade proposed by Long. If he made such statement, he stated what was manifestly untrue. It is true, that Long caused him to be arrested, in February, 1879, for selling mortgaged property. Waiving a preliminary examination, he was placed under bond to appear at the Circuit Court to answer to an indictment. Long was not a surety on his bond. But the evidence establishes that the Circuit Court convened on the first Monday in March, and continued in session only one week, during which time Long made strenuous efforts to procure the return of a true bill. The grand jury failed to find an indictment, whereby Dent and his sureties were released by operation of law. On the day succeeding the adjournment of the grand jury, he left for Georgia, of his own accord, without any arrangement or understanding with Long concerning the purchase of the lands. He was not under arrest, and no criminal prosecution was pending at the time of making the conveyance. If Mrs. Dent was unduly influenced to sign the conveyance, it was induced by exciting the maternal instincts, which naturally move in sympathy for a dissipated and wayward son, and by creating apprehension of his and her disgrace from a supposed pending prosecution. There is no evidence except the testimony of W. B. W. Dent, which is impeached and contradicted in several material respects, that such influence was exerted through the agency of Long, or that he knew of it, or was privy thereto, or had any connection therewith; and he testifies that he did not know, and had no notice of the representations, and had no connection with them. The validity of a conveyance is not affected by reason of having been obtained by undue influence of this nature, exerted by a son for his selfish purposes, when the purchaser for valuable consideration does not participate therein, and has no notice thereof.—*Moog v. Strang*, 69 Ala. 98; *Moses v. McDade*, 58 Ala. 211. When Dent left Georgia to go to Alabama, to take charge of the lands, in 1874, his mother gave him a power of attorney, authorizing him to act as her agent, generally, to dispose of the crops, and manage the place as he deemed proper, and to sell the place, making bond for title, but not to make a deed, which she reserved to herself. Under this power of attorney, he signed his mother's name, by himself as agent, to notes on which Long was his surety, and were paid by him, and sold a part of the lands, the notes of the purchaser being turned over to Long when he bought. Such authority imports confidence, and it is not pre-

[Dent v. Long.]

tended that the power of attorney was obtained by undue influence. A conclusion that the deed to Long was obtained by fraud and undue influence, is not clearly authorized by the evidence.

There is not a fact or circumstance satisfactorily proved casting suspicion on the *bona fides* of the conveyance as between Mrs. Dent and Long. The ground of impeachment is, that she relied and acted on the false statements of her son. The evidence shows that a fair and full consideration was paid, consisting of about three hundred acres of land in Carroll county, Georgia, the surrender of all claims against W. B. W. Dent, amounting to about eleven hundred dollars, and two notes given by Long for the balance of the purchase-money, payable respectively November 1, 1879, and March 1, 1880, aggregating six thousand dollars. The proof abundantly shows that the lands in Alabama were not worth, at that time, exceeding five thousand dollars, the present increased value being attributable to the subsequent building of railroads running through the lands, mainly induced by Long's efforts; and the weight of the evidence is, that the lands in Georgia were of value greater than the value in which they were estimated in the trade. No injury resulted to Mrs. Dent.

Independent of these considerations, the delay in filing the bill is, under the circumstances, fatal to the right of complainants to rescind. When a party is invested with the option to rescind a contract, promptness of action on his part is requisite. A contract, obtained by fraud and undue influence, may be rendered valid by ratification, after the removal of such influence, or after the discovery of the fraud; and the right to rescind may be lost by a failure to disaffirm it within a reasonable time after such discovery, or by long delay in asserting the right, thereby raising a presumption of acquiescence, which, under some circumstances, may become conclusive. A transaction, impeachable at the time of its consummation, becomes unimpeachable, if the party, with full knowledge or notice of all the material facts, does anything tantamount to a recognition of the contract as existing and binding, or which is inconsistent with its repudiation; or if he remains silent, and abstains from impeaching it for a considerable time, so that the other party is reasonably induced to suppose the transaction is recognized, and is permitted to deal with the subject-matter under such belief.—2 Pom. Eq. Jur. § 965. Though a party has the right to determine whether or not he will rescind a contract, so long as he has made no election, if, whilst considering, the position of the other party is materially affected or changed, or innocent third persons have acquired intervening

[Dent v. Long.]

rights, in consequence of his unreasonable and unexplained delay, he will be precluded from exercising his right to rescind. *Clough v. Lon. & N. Wes. Railway Co.*, L. R. 7 Ex. 26.

Mrs. Dent lived more than two years after making this conveyance. In the meantime she expressed her satisfaction with the trade, collected the notes given by Long, and used and improved the lands she received in exchange, and without complaint or expression of dissatisfaction continued in possession and enjoyment of the fruits of the contract, thereby recognizing its existence. It appears from the evidence that, after the transaction, W. B. W. Dent was rarely at home with his mother; and it seems that any undue influence which had existed had been removed. The bill was filed March 3, 1887. If it be said that she continued to grow weaker mentally, and that the undue influence still lingered, the complainants after her death deliberated, and abstained from instituting proceedings, because of Joseph H. Dent's opposition, who did not think there was sufficient ground upon which to base a suit, until the discovery of W. B. W. Dent's arrest in the latter part of 1886. "They supposed, to use the language of the bill, that Mrs. Dent had been led to do an improvident act by reason of her weak mental condition, and her affection for her son." The lands in Carroll county were sold by her administrator, as the property of her estate, and at the sale, some portions were purchased by some of the complainants, and others by third persons. They are not in a condition to restore the lands received from Long. Unless the parties can be put in *statu quo*, which can not be done when a portion of the property has been disposed of, a court of equity is reluctant to rescind a contract, and will do so only when clear and strong equity compels it. During this time, complainants knew the mental condition of Mrs. Dent. The only matter which they claim to have subsequently discovered is, that W. B. W. Dent was, at the time of the conveyance, under arrest at the instance of Long. This, we have shown, is utterly disproved; consequently is not a fact, the ignorance of which excuses the delay. With knowledge of the mental condition of Mrs. Dent, of her affection for W. B. W. Dent, and his capacity to influence her, knowing of the execution of the deed, and that it was procured by him, and suspecting there was something wrong, some of the complainants became purchasers of the Carroll county lands, and the proceeds of the sale were distributed among them all. By such conduct, dealing with the property as belonging to the estate of Mrs. Dent, they ratified the transaction with Long. And in the meantime, two railroad companies have acquired the right of way over the lands, and Long has

12

put improvements thereon of value from fifteen to twenty thousand dollars.

Upon the facts disclosed by the record, the objections to a rescission of the contract and cancellation of the conveyance are insuperable.— *Wood v. Craft*, 85 Ala. 262; *Kern v. Burnham*, 28 Ala. 428.

Affirmed.