122 So.2d 716

**T. J. DUSENBERRY, Jr.,**

v.

**FIRST NATIONAL BANK OF BIRMING-HAM, as Trustee, et al.**

**6 Div. 76.**

Supreme Court of Alabama.

Dec. 10, 1959.

Rehearing Denied Sept. 15, 1960.

Morton & Hesse, Birmingham, for appellant.

Lange, Simpson, Robinson & Somerville and Bryan A. Chancey, Birmingham (guardian ad litem), for appellees.

LIVINGSTON, Chief Justice.

This is an appeal by J. T. Dusenberry, Jr., complainant in the court below, from a final decree of the Circuit Court of the Tenth Judicial Circuit of Alabama, in Equity, in a suit filed by him to set aside a deed executed by him conveying certain-described property to his wife, Margaret Kingman Dusenberry, on June 21, 1952, on the ground that such deed was a product of undue influence exercised over appellant by his wife. The decree appealed from denied the relief sought and dismissed appellant's bill of complaint.

The respondents-appellees to the bill are the following: The First National Bank of Birmingham, a National Banking Association, as Trustee under the will of Margaret Kingman Dusenberry, deceased; Clara C. Lelievre and Willis Calloway, as Coexecutors of the will of Margaret Kingman Dusenberry; Cornelia Kingman Calloway; Lucill Kingman Lynam, sometimes known as Lucille Kingman Lynam; Cornelia Calloway Lillard; Huffman Methodist Church, an Unincorporated Religious Society; Helen (Mrs. J. C.) Ellidge; Martha (Mrs. J. C., Sr.) Ellidge; Mrs. H. C. Dusenberry; Mrs. C. W. Delorme; Miss Alma E. Glass; and Bruce Lynam, Mike Lynam, Mark Hill Lillard, III, Willis Calloway Lillard, and Cornelia Ann Lillard, the latter five being minors under fourteen (14) years of age; Huffman Baptist Church, an Unincorporated Religious Society, and Five Mile Presbyterian Church, an Unincorporated Religious Society.

Some of the uncontradicted facts are as follows: J. T. Dusenberry, Jr., and Margaret Kingman Dusenberry were married on March 1, 1936, and at that time J. T. Dusenberry, Jr., was 49 or 50 years of age. They lived together as husband and wife until Margaret died on July 27, 1953. They had no children.

In 1946, Margaret Kingman Dusenberry had an operation for a malignancy, and about the middle of 1952, her physician told her that her malignancy was incurable and that she had only a short time to live.

Mrs. Dusenberry contacted Hon. Sidney W. Smyer, an attorney at law, and in a general way told him that she knew she was not going to live long and that she was concerned with what would happen to her husband and his property after her death. Mr. Smyer and Mr. and Mrs. Dusenberry had several conferences with reference to the matter.

As a result of these conferences, Mr. Dusenberry, on the 21st day of June, 1952, executed and delivered to his wife a deed conveying the suit property to her for and in consideration of "One and 00/100 ($1.-00) Dollars and love and affection for my.

wife * * *." The land conveyed by the deed is commercial property valued at about $80,000.

Four days subsequent to the execution of the deed, on June 25, 1952, Margaret Kingman Dusenberry made a will devising to the First National Bank of Birmingham, as Trustee, the property conveyed by the deed, as well as other property, some of which testatrix had also acquired from complainant by gift and some of her own which she did not acquire from her husband, for the use of appellant during his lifetime, with remainder over, free of trust, largely to her next of kin. Some of the respondents were left contingent interests under the will. On July 25, 1952, testatrix made a codicil to her will by which the "item" of her will originally appointing Hon. Sidney W. Smyer, executor, was deleted. In lieu thereof, Clara C. Lelievre, her accountant, and Willis Calloway, her brother-in-law, were made coexecutors.

As stated above, Mrs. Dusenberry died on July 27, 1953. Her will, with codicil, was probated in the Probate Court of Jefferson County, Alabama, on August 13, 1953. The administration of her estate is pending in that court. Appellant married again in June, 1955, and this suit was commenced on September 21, 1955.

A guardian ad litem was appointed by the court to defend the interests of the minors, who filed an answer to the bill of complaint for said minors, which answer was later amended. The respondents, The First National Bank of Birmingham, Alabama, as Trustee under the will of Margaret Kingman Dusenberry, deceased; Clara C. Lelievre and Willis Calloway, as Coexecutors of the will of Margaret King- man Dusenberry, deceased; Cornelia Kingman Calloway and Cornelia Calloway Lillard answered the bill of complaint to- gether. This answer was later amended. The Huffman Methodist Church, Mrs. H. S. Dusenberry, Mrs. W. C. Delorme, Miss Alma E. Glass, Huffman Baptist Church and Five Mile Presbyterian Church filed an answer to the bill of complaint, which also was later amended.

As indicated by appellant, we think we are safe in assuming that the real issue in this litigation was presented by para- graph 16 of the complainant's bill of com- plaint and the answer with its amendment filed by the respondents, The First Na- tional Bank of Birmingham, as Trustee under the will of Margaret Kingman Dusenberry, deceased; Clara C. Lelievre and Willis Calloway, as Coexecutors of the will of Margaret Kingman Dusen- berry; Cornelia Kingman Calloway and Cornelia Calloway Lillard. The answer of the other respondents other than Martha and Helen Ellidge are to all intents and purposes the same as that filed by The First National Bank of Birmingham, as Trustee, et al. Helen and Martha Ellidge filed separate answers in which they admit practically every allegation in the bill of complaint.

Paragraph 16 of the bill of complaint reads as follows:

"16. That on, to wit, the 21st day of June, 1952, the date and occasion when complainant executed and de- livered said warranty deed, your com- plainant and Margaret Kingman Dusenberry were husband and wife, and had been husband and wife since, to wit, March 1, 1936, and complain- ant reposed faith and confidence in the said Margaret Kingman Dusen- berry, and trusted her, and, having such faith in the said Margaret King- man Dusenberry, and by reason of an undue influence acquired by Margaret Kingman Dusenberry over complain- ant, he was induced to transfer his said property worth, to wit, $75,000.00, with a rental value of, to wit, $600.00 per month, to said Margaret Kingman Dusenberry by a voluntary convey- ance."

The answer thereto, with the amend- ments, reads as follows:

"16. For answer to paragraph 16 of the bill of complaint, said respondents say that they admit that on June 21, 1952, the complainant and Margaret Kingman Dusenberry were husband and wife and had been such since March 1, 1936 (said date of marriage being admitted on information and belief), and said respondents admit that complainant reposed faith and confidence in Margaret Kingman Dusenberry and that he trusted her. Said respondents deny that Margaret Kingman Dusenberry acquired or exercised any 'undue influence' over complainant. Said respondents admit that the complainant executed the conveyance transferring the property in question to Margaret Kingman Dusenberry; and said respondents further aver that Margaret Kingman Dusenberry was a dutiful wife, devoted to the physical, spiritual and healthful well-being of her husband, the complainant, and that the trust and confidence reposed in her on said occasion arose out of the lawful, natural and proper feeling and regard resulting from said marriage relationship. And said respondents further aver that said conveyance executed by the complainant to Margaret Kingman Dusenberry was made and executed with a full and thorough understanding on the part of the complainant and with his full approval and desire, and that the complainant and Margaret Kingman Dusenberry were advised by independent, impartial and expert advisers. Said respondents also deny the truth of averments in said paragraph that the said conveyance executed by the complainant was a voluntary conveyance, if by such averment it is meant that the complainant received no benefit on account of the execution and delivery of said conveyance; and said respondents are informed and believe and, upon such information and belief, charge that complainant received substantial bene-fits on account of and arising out of the execution and delivery of said conveyance to his said wife.

\* \* \* \* \* \*

"A. For further answer to the material averments of said bill of complaint, the respondents say that the averment that the conveyance of said property was caused by any unlawful 'undue influence' is an averment which is untrue.

"B. For further answer to the bill of complaint, said respondents say that the cause of action is barred on account of laches.

"C. For further answer to the bill of complaint and the alleged cause of action therein set forth, the said respondents say as follows:

"That said cause of action is barred by laches in that the deed or conveyance executed by the complainant was executed on, to wit, the 21st day of June, 1952, and that from said date, to wit, June 21, 1952, until the date of the death of Margaret Kingman Dusenberry, to wit, July 27, 1953, said complainant had full knowledge of said conveyance and the effect and result thereof and at no time denied, disputed or attacked said instrument, nor did he set forth any cause of action attacking the validity of said instrument or conveyance; and that this action, being the first act attacking the validity of said instrument, was not instituted until September 21, 1955, to wit, three years and three months after the execution of said deed, and that two years and one month's time elapsed from the date of the death of the grantee until the institution of the action at bar. And said respondents further aver that the condition of the parties has changed in that Margaret Kingman Dusenberry is dead and the complainant has remarried and is now under the obligations imposed by law by reason of the lawful marital relation-

ship existing between the complainant and his present wife, Mrs. Vivian Dusenberry, and that by the long delay and the change in the status of the parties and by reason of the death of Mrs. Margaret Kingman Dusenberry, it would be difficult, uncertain and hazardous to undertake to establish the truth concerning the behaviour, acts and purposes of Margaret Kingman Dusenberry and complainant.

\* \* \* \* \* \*

"D. For further answer to the bill of complaint and the allegations thereof, said respondents say as follows: that the complainant did not act seasonably to disaffirm the said deed (now sought to be cancelled) and thereby lost any right of disaffirmance of said deed.

"E. For further answer to the bill of complaint and the allegations thereof, said respondents say that following the execution and delivery of said deed (sought to be cancelled in this action) and prior to the filing of the bill of complaint in this cause the complainant with full knowledge of the facts, ratified the execution and delivery of said deed and thereby has lost the right of disaffirmance of said deed.

"F. For further answer to the bill of complaint and the allegations thereof, the said respondents say: that the complainant has accepted payment in part of the legacy or devise made to him by the will of his deceased wife and has thereby lost the right to disaffirm the execution of the said deed (now sought to be cancelled by this action)."

Upon evidence heard ore tenus, the trial court found in the decree appealed from:

"\* \* \* that a relationship of trust and confidence did, in fact, exist between the parties to the conveyance, and that the grantee strongly dominated this confidential relationship to such an extent that, had timely disaf-

firmance thereof been undertaken by complainant, he might have been carried to entitlement to relief on the strength of the presumption of invalidity attending such transactions when the subservient party is disadvantaged thereby.

"However, the conveyance was but part of a composite transaction between complainant and his late wife the latter of whom undertook to make a will embodying a rather detailed testamentary trust, dealing with the suit property as part of the grantee-testatrix's estate. This will was reduced to writing and executed on June 25, 1952, four days subsequent to the execution of the deed now sought to be cancelled. This testamentary trust is for the exclusive benefit of complainant during his lifetime, with remainder being limited over, free of trust, principally to relatives of the grantee-testatrix. The testamentary trust includes not only the suit property, but the entire separate estate of the grantee-testatrix. Complainant has no surviving parent, brother, sister, or lineal descendant."

The trial court in denying relief and dismissing the bill, held that:

"\* \* \* in this Court's opinion, the complainant's conduct verges nearly upon ratification, and does constitute such acquiescence or, to say the least, laches as to preclude his obtaining the relief sought at this late date. The court rests its decision denying relief upon the two latter bases."

Implicit in the court's decree is a finding or conviction that the appellant had knowledge of the facts, and with such knowledge he failed to disaffirm the transaction within a reasonable time and that he had sufficient mental capacity to understand and appreciate the effect upon him of the deed and the will. We are not to lose sight of the fact that some $30,000 of the testatrix' own property other than that conveyed by the deed, now sought to be set

aside, was included in the trust estate created for her husband.

■ The only ground of attack upon the deed in this case is that of undue influence, which is necessarily based upon a contention that the deed is voidable and not void.

■■ The right to avoid a transaction which is voidable merely, may be lost by express ratification, acquiescence, failure to disaffirm promptly, and laches. While they are often used interchangeably and without sufficient differentiation in some of the cases, we think that the distinction is clearly shown in the following excerpt from Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, commencing at page 860. We quote Secs. 964 and 965, which have reference to transactions induced by fraud, actual or constructive, including undue influence, which is a species of fraud, and containing a discussion of the loss of the remedial right to avoid such voidable transactions "by subsequent confirmation, by acquiescence, or even by mere delay or laches."

"Sec. 964. Confirmation or Ratification.—Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he *may* lose such remedial right by a subsequent confirmation, by acquiescence, and even by mere delay or laches (See § 916). Wherever a confirmation would itself be subject to the same objections and disabilities as the original act, a transaction cannot be confirmed and made binding; for confirmation assumes some positive, distinct action or language, which, taken together with the original transaction, amounts to a valid and binding agreement. In General, contracts which are void from illegality cannot be ratified and confirmed; contracts which are merely voidable because contrary to good conscious or equity may be ratified, and thus established.

"If the party originally possessing the remedial right has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware, and all undue influence is wholly removed so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative is destroyed. If, on the other hand, the original undue influence still remains, or if the act is simply a continuation of the former transaction, or if the party wrongly supposes that the original contract or transaction is binding, or if he has not full knowledge of all the material facts and of his own rights, no act of confirmation, however formal, is effectual; the voidable nature of the transaction is unaltered.

"§ 965. Acquiescence and Lapse of Time.—A second mode by which the remedial right may be destroyed, and the transaction rendered unimpeachable, is acquiescence. The term 'acquiescence' is sometimes used improperly. It differs from confirmation on the one side, and from delay on the other. While confirmation implies a deliberate act, intended to renew and ratify a transaction known to be voidable, acquiescence is some act, not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing, and intended in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it. The theory of the doctrine is, that a party, having thus recognized a contract as existing, and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, cannot afterwards be suffered to repudiate the transaction and allege its voidable nature. It follows that *mere* delay, mere

suffering time to elapse without doing anything, is not acquiescence, although it may be, and often is, strong evidence of an acquiescence; and it may be and often is, a distinct ground for refusing equitable relief, either affirmative or defensive (See §§ 817, et seq.). As acquiescence is thus a recognition of and consent to the contract or other transactions as existing, the requisites to its being effective as a bar are knowledge or notice of the transaction itself, knowledge of the party's own rights, absence of all undue influence or restraint, and consequent freedom of action; a conscious intention to ratify the transaction, however, is not an essential element. When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

"Laches.—Even where there has been no act nor language properly amounting to an acquiescence, a mere delay, a mere suffering time to elapse unreasonably, may of itself be a reason why courts of equity refuse to exercise their jurisdiction in cases of actual and constructive fraud, as well as in other instances. It has always been a principle of equity to discourage stale demands; *laches* is often a defense wholly independent of the statute of limitation. Promptness in asserting a remedial right against fraud is sometimes required; but no delay will prejudice a defrauded party as long as he was ignorant of the fraud. Each case involving the defense of delay or lapse of time must, to a great extent, depend upon its own circumstances."

This court has enunciated principles in line with the above excerpts from Pomeroy. We quote from Dent v. Long, 90 Ala. 172, 176, 7 So. 640, 642, which cites with approval Sec. 965 of Pomeroy:

"When a party is invested with the option to rescind a contract, promptness of action on his part is requisite. A contract obtained by fraud and undue influence may be rendered valid by ratification after the removal of such influence, or after the discovery of the fraud, and the right to rescind may be lost by a failure to disaffirm it within a reasonable time after such discovery, or by long delay in asserting the right, thereby raising a presumption of acquiescence, which, under some circumstances, may become conclusive. A transaction impeachable at the time of its consummation, becomes unimpeachable if the party with full knowledge or notice of all the material facts, does anything tantamount to a recognition of the contract as existing and binding, or which is inconsistent with its repudiation, or if he remains silent and abstains from impeaching it for a considerable time, so that the other party is reasonably induced to suppose the transaction is recognized, and is permitted to deal with the subject-matter under such belief. 2 Pom.Eq.Jur. § 965. Though a party has the right to determine whether or not he will rescind a contract, so long as he has made no election, if, whilst considering, the position of the other party is materially affected, or changes, or innocent third persons have acquired intervening rights, in consequence of his unreasonable and unexplained delay, he will be precluded from exercising his right to rescind."

In a comparatively recent case, Cochran v. Cochran, 247 Ala. 588, 25 So.2d 693, 694, this court said, quoting from Kelly v. Tatum, 222 Ala. 655, 133 So. 703, 706:

" 'Rescission of a contract on account of fraud or undue influence must be asserted promptly after the fraud is discovered or after the undue influence ceases to operate. Romanoff Min. Co. v. Cameron, 137 Ala. 214, 33 So. 864; Southern States Fire & Cas. Ins. Co. v. De Long, 178 Ala. 110, 59 So. 61; Stephenson v. Allison, 123 Ala. 439, 26 So. 290; 2 Pom.Eq. § 897. It is further said in 2 Pom. on Equity, § 965, p. 2094, in this connection:

" ' "When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity." ' "

It would serve no useful purpose to here attempt an analysis of the evidence from a record containing over 1,300 transcript pages.

■■ We have carefully examined the record, and there is ample evidence to support the conclusion reached by the trial court that the execution and delivery of the deed by the husband to the wife, and her execution of the will, were part of one transaction, and that the death of the wife, followed by more than two years of inaction by the husband, with knowledge of all the facts, precludes the husband from exercising his right to rescind. The fore-

going will dispose of assignments of error numbered 11 through 25, and if no other error of law intervened, we must affirm the decree of the court below.

■ In assignments of error 1 through 10, inclusive, appellant raises the point that the answers designated as b, c, d, e, and f are separate and several pleas, and are insufficient and should be disregarded because of the provisions of Rule 16 of the Equity Rules, formerly Sec. 6547 of the Code of 1923, Code 1940, Tit. 7 Appendix. These are merely defenses set out as part of the answer, which are allowed under Equity Rules 16 and 25, and the manner and form of these paragraphs, even though they are set up as separate defenses, do not make them pleas, as shown by Mylin v. King, 139 Ala. 319, 35 So. 998, Headnote 4, which is as follows:

"4. Equity pleading; when no special plea shown.—While the defendant in a chancery suit may interpose a defense by an independent plea pleaded separately from the answer, or incorporated as an independent plea in the answer, yet, the mere averments in the answer as a part thereof, of a general defense to the bill, cannot be set up as a plea in equity; and the fact that the defendant employs the language that 'he avers, says and pleads' the facts stated, does not characterize the averment as a plea, when it is shown that it was not incorporated in the answer as a plea, and was not presented by way of an independent plea."

The foregoing headnote is fully sustained by the opinion in said case.

Assignments of error 26 through 34, inclusive, complains of the trial court's action in sustaining objections to certain questions. We have carefully examined each of the questions to which an objection was sustained and are clear to the conclusion that if any error intervened in the action of the trial court in sustaining objection thereto, there is no probability that it has injuriously affected any substantial rights of the appellant. These

questions are of such a nature and involve matters that were plainly apparent to the trial judge after listening to a long and tedious trial. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

We have carefully examined the record and there is no reversible error in it. The judgment is therefore affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.