THOMAS E. SHARP, APPELLANT, *v.* TWIN LAKES CORPORATION, A NEVADA CORPORATION, AND J. D. WRATHER AND LLOYD L. ST. JOHN, RESPONDENTS.

No. 3827

May 11, 1955.                               283 P.2d 611.

*Lindley, Lazar & Scales,* of San Diego, California, and *Taylor & Gubler,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* and *David Goldwater,* of Las Vegas, and *Ralli, Rudiak & Horsey,* of Las Vegas, for Respondents.

## O P I N I O N

By the Court, MERRILL, C. J.:

This is an action brought by respondent Twin Lakes Corporation as lessee for the return of a deposit made by it to secure performance of the terms of a lease. Judgment of the trial court was in its favor and the lessor-defendant has taken this appeal. A counterclaim was filed by the defendant below to establish that the lease had been forfeited by the lessee through breach of its terms, and for costs of suit and counsel fees. Judgment of the trial court was in favor of the lessee upon this counterclaim and the lessor has appealed from that judgment as well. The interests of the individual respondents are aligned with those of the lessee. In our view the judgment in both respects must be affirmed. In both respects the essential question is whether the lessee had substantially performed what was required of it. The trial court, sitting without a jury, found that it had and the record supports this determination.

The leased premises are located in Clark County near Las Vegas and are known as Twin Lakes Farm. The lease was executed in 1947 for a term of ten years subject to conditional option to renew and option to buy. By the time this action was brought the lease had thrice been amended. Under its terms the property was to be operated as a resort. It included an orchard, vineyard, pasture lands, a swimming pool, refreshment facilities, two scenic lakes and a dwelling house used by the lessor. By the terms of the lease as amended, the lessee agreed to maintain the dwelling house for the exclusive use of the lessor. It was also to construct, for the use of resort guests, eight bungalows of six living units each and to build for the use of the lessor a garage and workshop. It was also to grade and pave a road to the premises from the main highway.

To secure completion of this building and paving program and protect the property against liens, a deposit of $25,000 was placed in escrow. The third amendment to the lease specified the conditions of that escrow. In brief it provides that the lessee should become entitled to one-half of the deposit (1) upon having expended $100,000 in the agreed construction; (2) upon giving satisfactory proof of financial ability to complete the program free from liens and debt. The amendment to the lease provides for the form and manner in which demand was to be made by the lessee and proof made that the conditions had been met; that when proper demand had been made the lessor would give his consent to payment of the sums due to the lessee.

In May 1952 the lessee made demand for payment upon the escrow holder. The demand showed expenditure of $166,947.27 upon the construction project; that unpaid construction bills totalled $5,610.02; that $5,-855.48 was needed to complete the agreed construction; that the lessee's share of the deposit would thus complete the project free from debt. A copy of the demand was mailed to the lessor in California with a request

that he give his consent. This he refused to do. In August 1952, three months after demand, this action was brought for a declaration of rights under the lease and to require the lessor to give his consent to payment. At the time of trial in March 1954, it was established that the building program had been completed by the lessee without awaiting receipt of the escrowed fund. Judgment in favor of the lessee was given, requiring the lessor's consent to the return to the lessee of the sum of $11,434.35 of the fund.

The lessor's principal defenses to the complaint were: (1) that the demand had not properly been made; (2) that construction did not conform to plans and specifications.

Upon the first point the lessor complains as to the form of the demand, as to the manner in which supporting vouchers and proofs were made available and in other respects contends that the demand in form and manner did not meet the requirements of the lease. The trial court found that in these respects there had been substantial compliance with the lease provisions. The record amply supports this holding. Certainly the demand together with the supporting proof which was made available to the lessor would have enabled him to determine whether or not the conditions had been met.

Upon the second point the lessor has established that in numerous respects the building and paving program did not conform to plans and specifications. The lessor does not appear to deny that the lessee has established its financial ability to complete the project according to its own concept of what would constitute completion. The lessor, rather, challenges the lessee's concept of completion and thus takes the position that the lessee has failed to establish what the cost of true completion would be.

We see no need to encumber the record with a listing of the many deviations from plans and specifications

asserted by the lessor. (Forty-five were specified upon the garage and workshop alone.) The trial court concluded that the contract had been substantially performed. From a reading of the record we are drawn to the same conclusion. In most instances it must be conceded that the deviations were trivial and technical. Viewing the contract and its performance as a whole it must be said that there was here "such an approximation to complete performance that the owner [has obtained] substantially what was called for by the contract, although it may not be the same in every particular." Handy v. Bliss, 204 Mass. 513, 90 N.E. 864, 134 Am.St.Rep. 673.

It is now well established as the general rule with respect to building contracts that the law implies a substantial rather than a literal or exact performance of the terms of the contract. See: Lloyd on the Law of Building and Buildings, 2d ed. secs. 31, 39; 9 Am.Jur. 30, Building and Construction Contracts, sec. 40; ann. 24 L.R.A. (N.S.) 327; 134 Am.St.Rep. 679. It would seem to follow, a fortiori, that a covenant by a lessee to make improvements upon the leased premises is to be given a reasonable interpretation in the light of the purposes to be served and the result sought to be accomplished and that, as against the lessor, substantial compliance with the covenant is sufficient. See: 51 C.J.S. 1131, Landlord and Tenant, sec. 391.

The agreement of the parties with reference to the escrowed fund must, then, be construed to contemplate proof of financial ability to complete the contract substantially in accordance with its terms. This proof the lessee has given and accordingly is entitled to return of the fund. The lessor has offered no proof that he has suffered damage by reason of any of the deviations.

We concur, then, with the judgment of the trial court upon the complaint of the lessee.

As to the lessor's counterclaim for forfeiture of the

lease, he relies upon numerous breaches in addition to those relating to the building and paving program. These deal largely with the manner in which the premises were maintained and used, together with the lessee's failure properly to maintain insurance and promptly to discharge tax and rent obligations. Again the lessor has failed to show damage.

It is admitted that rent payments due under the lease have, with knowledge of the defaults, been accepted by the lessor to and beyond the date of commencement of this suit. He has, until filing of his counterclaim, given the lessee no intimation that he regarded the lease as forfeited. His conduct was consistent only with an election to hold the lessee to its obligations under the lease. Clearly he has, by acceptance of rentals under these circumstances, affirmed the existence of the lease and recognized the lessee as his tenant. His right to claim forfeiture has thus been waived. Kern Sunset Oil Co. v. Good Roads Oil Co., 214 Cal. 435, 6 P.2d 71, 80 A.L.R. 453; See: ann. 109 A.L.R. 1267, 1269.

Further the trial court was impressed by a comparison between the sum of these breaches and the total expenditures of the lessee upon the premises. The evidence is that, including the construction and paving costs already mentioned, between $350,000 and $450,000 has been expended upon this property under a lease which carries a conditional option to purchase at a price of $225,000. The court concluded that the breaches were comparatively trivial and that there had been such substantial compliance with the terms of the lease as to preclude forfeiture. A study of the record impels us to the same conclusion.

In support of his counterclaim for costs and counsel fees the lessor relies upon a lease provision that he be reimbursed in these respects should he "be made a party, without his fault, to any litigation brought by or against the tenants." The trial court ruled that since the lessor

was not justified in withholding his consent, he was in no position to take advantage of this provision. We concur.

Judgment affirmed with costs.

BADT and EATHER, JJ., concur.