LUIS DAVIDSOHN, Appellant/Cross-Respondent, v. HELEN DOYLE, Respondent/Cross-Appellant.

No. 21481

January 30, 1992                                825 P.2d 1227

*Michael R. Mushkin & Associates* and *Mark C. Hafer,* Las Vegas, for Appellant/Cross-Respondent.

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Respondent/Cross-Appellant.

# OPINION

*Per Curiam:*

*Facts*

Appellant Luis Davidsohn leased land and commercial warehouses to the respondent, Helen Doyle. Doyle, in turn, subleased space to various parties. The Davidsohn-Doyle lease requires Doyle, at her own cost, to keep the entire demised premises in good condition and repair.[1] Paragraph 7(h) of the lease permits the lessor to reenter the property and terminate the lease upon the lessee's breach.[2]

In February 1988, Davidsohn hired Ivan Tippetts, a real estate appraiser and licensed contractor, to inspect the condition of the leased premises. Tippetts' inspection revealed "a complete disregard for the maintenance, health, safety and code requirements." Consequently, Davidsohn's attorney sent a letter to Doyle and her attorney. The first three paragraphs of the letter discuss the Tippetts report. The fourth paragraph of the letter states:

> THIS LETTER IS NOTICE OF TERMINATION OF THE LEASE TENANCY. Pursuant to the Lease, you have thirty (30) days within which to institute significant repair efforts. I am well aware that it is virtually impossible to accomplish what is needed to bring this property up to the very minimum standard within thirty (30) days. This notice is sent pursuant to the Lease and the requirements within the State of Nevada.

The remainder of the letter expresses concern over the condition of the leased property, and suggests that the parties' attorneys sit down to devise a plan of action.

Tippetts reinspected the property in April after Doyle made

---

[1]The lease provision reads:

> 4. *MAINTENANCE:* Lessee shall at their own cost and expense keep the entire demised premises, including any building or buildings constructed by Lessee, in good condition and repair at all times. Lessor shall be under no obligation whatsoever to make any repairs to any portion of the demised premises nor shall Lessor at any time be called upon or obligated to remodel, redecorate or perform pertaining to the demised premises or any building or buildings thereon.

[2]Paragraph 7(h), in pertinent part, states:

> If any default be made by the Lessee in the observance or performance of any of the terms, conditions or covenants hereof, the Lessor shall have the right, after first having given the Lessee at least fifteen days written notice of such default, and the Leessee not having cured the same within such fifteen days, to enter into possession of the demised premises and to remove all persons and property therefrom and, at Lessor's option to terminate this lease.

some repairs, but found that the work was not done in a professional manner, and that it failed to cure the major problems. Thereafter, Davidsohn's attorney sent a second letter to Doyle, dated April 25, 1988. This letter stated that Doyle's lease was terminated because she failed to remedy the breach charged in the March 14th letter.

Davidsohn filed a complaint for declaratory relief to terminate the lease on May 3, 1988. Doyle continued to pay rent through August 1989 by depositing checks in a Los Angeles bank under an account maintained in the name of Davidsohn's wife. On June 1, 1988, Davidsohn sought a temporary restraining order, enjoining Doyle from (1) collecting rent from her sublessees, (2) interfering with Davidsohn's access to the property and tenants, and (3) doing further work on the property without prior approval. The district court denied this motion, but ordered Doyle to give Davidsohn reasonable access to the property. Tippetts inspected the property again on July 21, 1988, and found the repair work still inadequate and unprofessional. That day Tippetts filed a complaint with the Las Vegas Police Department stating that his life had been threatened by Doyle's property manager during the inspection.

Davidsohn moved for summary judgment on August 10, 1988. After being granted time for discovery, Doyle also moved for summary judgment. The court denied Davidsohn's motion and granted Doyle's on the basis that Davidsohn had waived his right to terminate the lease by accepting rent from Doyle despite knowledge of the breach. Additionally, the court determined that the March 14, 1988 letter did not comply with NRS 40.2516, which requires that written notice in an unlawful detainer action give the tenant the option to comply with the lease terms or vacate the premises.

Doyle filed a motion to amend the court's findings of fact and conclusions of law and judgment, seeking attorney's fees and costs of $36,917.36 under the lease. After oral argument, the court denied Doyle's motion, finding that the lease provision regarding attorney's fees did not apply under the facts of the case.

Davidsohn appealed from the grant of summary judgment in favor of Doyle, and Doyle cross-appealed from the denial of her motion requesting attorney's fees and costs. We are convinced that under the facts of this case, Davidsohn did not waive his right to terminate the lease by accepting rent from Doyle. We are also persuaded that Davidsohn gave Doyle adequate notice of his intent to terminate the lease. Therefore, we reverse the summary judgment and remand the matter to the district court for further proceedings.

148

## Discussion

A party is entitled to summary judgment when there are no material issues of fact to be resolved, and the moving party is entitled to judgment as a matter of law. NRCP 56(c). Neither party contends that there are any disputed material factual issues. Therefore, our analysis centers on whether the district court correctly perceived and applied the law. Mullis v. Nevada Nat'l Bank, 98 Nev. 510, 512, 654 P.2d 533, 535 (1982).

### A.  Acceptance of rent as a waiver of breach.

In ruling as it did, the district court relied on the general rule that when a lessor accepts rent, with full knowledge of a breach by his lessee, the lessor waives his right to terminate the lease based upon that breach. Reno Realty v. Hornstein, 72 Nev. 219, 301 P.2d 1051 (1956); Sharp v. Twin Lakes Corp., 71 Nev. 162, 283 P.2d 611 (1955).

Davidsohn urges this court to recognize an exception to the general rule based upon the protracted pendency of the action between the parties, the commercial nature of the subject lease, and the March 14, 1988 "notice of default" communicated to Doyle. The principal Nevada case holding that a lessor waives his right to terminate a lease by accepting rent from the lessee is Sharp v. Twin Lakes Corp., 71 Nev. 162, 283 P.2d 611 (1955). In *Sharp,* a lessee sued its lessor for the return of deposit money which was held in escrow to ensure performance of the lease terms. The lessor counterclaimed for forfeiture of the lease based on numerous breaches by the lessee. We held that the lessor had waived his right to terminate the lease for breach by accepting rent without giving the leassee any "intimation that he regarded the lease as forfeited." 71 Nev. at 167, 283 P.2d at 613. Until filing the counterclaim, the lessor's actions "affirmed the existence of the lease and recognized the lessee as his tenant." *Id.*

In *Sharp* we were concerned about the lessor seeking to terminate the lease after lulling the lessee into believing that its breach of the terms of the lease would be overlooked. In the present case, Doyle cannot reasonably contend that Davidsohn's actions led her to believe that any failure to properly maintain the leased premises would be excused. Davidsohn acted promptly after learning of the deteriorated condition of the buildings. After giving Doyle an opportunity to repair the property, Davidsohn pressed for termination of the lease. Doyle was aware of these efforts as she continued to pay rent for well over a year after Davidsohn brought suit. Thus, Davidsohn did not induce Doyle into believing the breach would be excused.

Additionally, the lease involves commercial property. Doyle is

a businesswoman subleasing the property for profit, not an unsophisticated residential tenant in need of a roof over her head. Doyle was in need of no special protection from Davidsohn.

Several neighboring jurisdictions permit a lessor in certain instances to accept rent without waiving the right to terminate the lease. *See* DMV Co. v. Bricker, 672 P.2d 933, 935 (Ariz. 1983); Riverside Development Co. v. Ritchie, 650 P.2d 657, 662-63 (Idaho 1982); Fogel v. Hogan, 496 P.2d 322, 324 (Colo.Ct.App. 1972). These states recognize the general rule that a landlord's acceptance of rent after notice of a breach waives the right to terminate the lease based on that breach. However, when a lessor takes definite action to terminate a lease, and the lessee opposes the action and remains in possession, these jurisdictions allow the lessor to continue accepting rent from the lessee while pursuing termination. *But see* Woodland Theatres v. ABC Intermountain Theatres, 560 P.2d 700 (Utah 1977) (finding a waiver even though lessor initiated two actions to terminate lease).

We agree with the reasoning of those cases that recognize as an exception to the general rule, a lessor's right to accept rent after a breach by the lessee when the lessor timely expresses his intent to terminate the lease and the lessee nevertheless remains in possession.[3] Irrespective of who prevails in litigation, the lessee will be liable for rent incurred during the period of possession of the demised premises. The issue is simply one of timing, not of entitlement. Requiring a lessor to forego rental payments until resolution of a dispute may be unduly burdensome, as in the instant case involving a commercial lease with a substantial monthly rental. To recognize a waiver in the present case would be tantamount to sanctioning the breach by allowing Doyle to continue collecting rent from her sublessees without paying Davidsohn or curing the breach. As stated in *Riverside Development:*

> The doctrine of waiver is an equitable doctrine based upon fairness and justice. However, the lessor, who has mortgages, taxes and other expenses to pay, cannot fairly be said to be a beneficiary of such fairness and justice as long as he is forced to avoid the acceptance of any compensation for a tenant's unlawful possession of the property (which may extend for periods of months or years due to litigation), because of the threat that as soon as he does the tenant will cry waiver.

650 P.2d at 662.

---

[3]*Cf.* Wecht v. Anderson, 84 Nev. 500, 506, 444 P.2d 501, 505 (1968) (lessor did not waive breach by accepting rent during a grace period given to the lessee to either cure the default or purchase the property).

Based upon our adoption of the exception to the general rule, as discussed above, we hold that Davidsohn did not waive his right to terminate the lease by accepting rental payments from Doyle after knowledge of the breach. Davidsohn timely pursued his action, and we cannot seriously doubt that Doyle was aware of Davidsohn's intention to terminate the lease if repairs were not timely made. Although the first letter sent to Doyle was somewhat equivocal, the second letter and the initiation of the declaratory judgment action adequately notified Doyle that Davidsohn was seeking to terminate the lease because of the state of disrepair of the leased property. Davidsohn's complaint about the condition of the premises appears well supported in the record. Therefore, Davidsohn may pursue his action for termination despite his acceptance of the rent tendered by Doyle.

### B. Sufficiency of the notice.

The district court determined that Davidsohn failed to give adequate notice of his intent to terminate the lease, because the March 14, 1988 letter did not satisfy the statutory notice requirements for unlawful detainer actions. Davidsohn contends, however, that the unlawful detainer statute was inapplicable because he sought to terminate Doyle's tenancy under the terms of the lease. We agree and hold that a lessor who seeks termination under a lease provision is not obligated to meet the notice requirements of NRS 40.2516.

NRS 40.2516 outlines the procedures for regaining possession of real property from a tenant in unlawful detainer.[4] In an unlawful detainer action, strict compliance with the statutory notice provision is a jurisdictional prerequisite. Roberts v. District Court, 43 Nev. 332, 340, 185 P. 1067, 1069 (1920); Paul v. Armstrong, 1 Nev. 70, 76 (1865). Here, Davidsohn did not institute an unlawful detainer action; he sought a declaratory

---

[4]NRS 40.2516, in pertinent part, is set forth below:

A tenant of real property or a mobile home for a term less than life is guilty of an unlawful detainer when he continues in possession, in person or by subtenant, after a neglect or failure to perform any condition or covenant of the lease or agreement under which the property or mobile home is held, other than those mentioned in NRS 40.250 to 40.252, inclusive, and NRS 40.254, and *after notice in writing, requiring in the alternative the performance of the condition or covenant or the surrender of the property,* served upon him, and, if there is a subtenant in actual occupation of the premises, also upon the subtenant, remains uncomplied with for 5 days after the service thereof.

(Emphasis added.)

judgment terminating the lease pursuant to a provision of the lease. When a lessor seeks termination under a lease provision, the notice requirements for an unlawful detainer action are inapplicable.[5] Thus, the district court improperly found that Davidsohn was required to comply with NRS 40.2516.[6]

Because of our disposition of this appeal, it is unnecessary to discuss Doyle's cross-appeal from the district court's ruling denying her attorney's fees.

For the reasons specified above, we reverse the district court's summary judgment in favor of Doyle and remand the case for further proceedings consistent with this opinion.

MOWBRAY, C. J., ROSE, STEFFEN and YOUNG, JJ., and LEHMAN, D.J.,[7] concur.

---

[5]However, under NRS 40.252, a contractual provision which attempts to shorten the notice period required in NRS 40.2516 is void.

[6]Since we have determined that the notice given was sufficient, Davidsohn may be entitled, under the lease, to expenses incurred in drafting and serving the notice of termination to Doyle. The district court, determining that no "notice" was served, denied such expenses.

[7]The Honorable Jack Lehman, Judge of the Eighth Judicial District, was designated by the Governor to sit in the place of THE HONORABLE CHARLES E. SPRINGER, Justice. Nev. Const. art. 6, § 4.