Kary L. Lucas ("the tenant") sued Bonnie P. Lyle, ("the landlord"), alleging breach of a lease. From a summary judgment in favor of the landlord, the tenant appealed to the Alabama Supreme Court. The supreme court transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975. We affirm.
On January 23, 1996, the parties entered into a lease of commercial property for use as a hairstyling salon "and for no other different use or purpose." The term of the lease was from February 1, 1996, to April 14, 1998, with a monthly rent of $750. The tenant discovered after he signed the lease that city zoning regulations would not permit him to use the premises for a hairstyling salon. The record does not indicate whether the landlord, before signing the lease, knew of the zoning restriction. The tenant then began efforts to have the property rezoned. The tenant's efforts were successful; on April 15, 1997, the property was rezoned. On June 7, 1997, the tenant opened his hairstyling salon. During the time the tenant was unable to operate his salon he continued to pay rent.
After the term of the lease expired on April 14, 1998, the tenant continued to occupy the premises and to pay rent. The lease contained an option-to-purchase provision, but the tenant did not exercise that option. In October 1998, six months after the expiration of the lease term, the landlord sold the property to a third party. On October 8, 1998, the landlord and the tenant executed a "Cancellation of Lease Agreement," stating their "desire to terminate and cancel [the] lease dated January 23, 1996," and to "release and discharge one another from any and all claims and liability arising under or in connection with the lease."
In February 2000, the tenant sued the landlord, alleging a breach of the lease covenant of quiet enjoyment and seeking damages for the 16 months that the tenant *Page 548 
had been unable, because of the zoning restriction, to use the premises as a hairstyling salon. The circuit court entered a summary judgment for the landlord, without stating a reason.
The tenant argues that, because for 16 months the property was not capable of being put to its intended use, he is entitled to be reimbursed for the rental payments, for lost profits, and for expenses he incurred in having the property rezoned. The landlord contends that the tenant's claims are barred by the following release provision contained in the "Cancellation of Lease Agreement": "Tenant and Landlord hereby release and discharge one another from any and all claims and liability arising under or in connection with the lease."
The tenant first argues that the release was not supported by consideration. We reject that argument.
 "[A]n agreement effecting `mutual releases of the respective obligations that each of two parties owes to the other, each release being the consideration for the other, [is] supported by sufficient consideration.'"
Penney v. Burns, 226 Ala. 273, 274, 146 So. 611, 612 (1933) (quoting 53 Corpus Juris 1206, § 20).
Citing Walker v. Southern Trucking Corp., 283 Ala. 551, 219 So.2d 379
(1969), the tenant next argues that the release did not apply to that portion of the lease term for which the property could not have been used as a hairstyling salon because, he contends, the lease was void during that period. We also reject that argument.
In Walker, the parties entered into a lease of property for an "office and warehouse and Trucking Terminal and for no other different object or purpose." Id. at 552, 219 So.2d at 381. Unknown to both the lessor and the lessee at the time the lease was executed, a local zoning ordinance prohibited the use of the property as a trucking terminal. Both parties tried to have the zoning ordinance changed so that the property could be used as contemplated in the lease. However, those efforts were unsuccessful and the lessee eventually vacated the premises and stopped paying the rent. The lessor sued for the unpaid rent, and the lessee counterclaimed for the amount it had spent to prepare the property for the operation of its business. The trial court determined that the lessor was not entitled to recover the rent. The supreme court affirmed, holding:
 "Where . . . the lease permits the lessee to use the premises for only a single purpose, a prohibition of law against such use will, according to the weight of authority, annul or terminate the contract and relieve the tenant of obligation thereunder."
283 Ala. at 553, 219 So.2d at 381 (quoting 32 Am. Jur. Landlord Tenant § 229 at 212 (1941)).
There are several factual and legal distinctions between this case andWalker. First, both parties in Walker were unaware of the zoning restriction when they signed the lease; thus, the supreme court treated the situation as a mutual mistake of law. Quoting an earlier Alabama Supreme Court decision, the court stated:
 "When both parties, acting under a mistake of law, make a contract which the law forbids, then the principals are not liable thereunder."
283 Ala. at 553, 219 So.2d at 381 (quoting Wilson v. McKleroy,206 Ala. 342, 348, 89 So. 584, 588 (1921)). In the present case, the record indicates that the tenant, when he signed the lease, was unaware of the zoning restriction, but the record does not indicate that the landlord was similarly unaware of the restriction. This case is, therefore, not controlled by the mutual-mistake-of-law *Page 549 
decisions. Moreover, a mutual mistake of law results in a voidable, rather than a void, contract. See Thomas v. Davis, 241 Ala. 271,2 So.2d 616 (1941); Tidwell v. Tidwell, 505 So.2d 1236 (Ala.Civ.App. 1987). See also 3 Corbin on Contracts § 616 at 750-51 n. 46 (1960), citing with approval the following illustration from § 502 ofRestatement of Contracts:
 "A lease was made on the basic assumption that a wooden building could lawfully be erected on the land by the lessee. Two days earlier, the erection of such a building had been forbidden by a municipal ordinance. The lease is said to be voidable by either party that is harmed."
3 Corbin on Contracts at 751 n. 46 (emphasis added).
Arguing that the Walker court treated the lease in that case as void, the tenant contends that the release he signed on October 8, 1998, applied only to that portion of his lease that, he says, was not void — the time during which he was able to operate his styling salon. We acknowledge that the Walker court quoted from a New York decision,Ober v. Metropolitan Life Ins. Co., 157 Misc. 869, 871, 284 N.Y.S. 966,968 (1935), in which the New York court characterized a lease for a prohibited purpose as "void":
 "`The lease being for prohibited purposes, no basis existed for the landlord's claim for rent or for tenant's claim to continued use and occupancy. The lease was void, hence unenforceable.'"
283 Ala. at 553, 219 So.2d at 381 (emphasis added). Notwithstanding the quotation from Ober, we do not think our supreme court treated the lease in Walker as "void," in the sense of its being a nullity ab initio. "That which is void provides no basis for corrective action. That which is merely voidable is viable until declared void and it will support both a waiver and an amendment." Ellis v. Hilburn, 688 So.2d 236, 238 (Ala. 1997). Moreover, the New York court that decided Ober had previously held that if a tenant continues to pay rent and attempts to obtain a zoning variance or change then the tenant waives his claim that the lease has been terminated by the zoning restriction. See Say-Phil Realty Corp. v.De Lignemare, 131 Misc. 827, 228 N.Y.S. 365 (1928).
We conclude that the holding of Walker is that the lease was voidable at the option of the lessee. The Walker lessee, by vacating the premises and by discontinuing the rent payments, opted to treat the lease as having been cancelled. Here, in contrast, the tenant opted to treat the lease as viable — by continuing to pay the rent during the entire time he was unable to use the property as intended and by failing to notify the landlord that he considered the lease over.
If a lease is considered to be void, then the parties have no remedies against each other and a court will generally leave the parties where it finds them. See Restatement 2d of Property, § 9.1 at 308-09 (1977). On the other hand, if a lease is considered to be voidable at the election of the lessee, then the lessee must take the following steps to terminate the lease:
"Termination of the Lease
 "If the tenant is entitled to terminate the lease, the lease is terminated if the tenant, while the right to terminate exists,
"(1) vacates the leased property,
 "(2) complies with any valid provision of the lease as to the method of termination, and
 "(3) in the absence of any valid provision on the subject, takes reasonable steps to assure that the landlord has knowledge of his decision *Page 550 
to terminate the lease and the reason therefor."
Id., § 10.1 at 327.
Here, the tenant took no steps to exercise his option to declare a forfeiture of the lease for breach of the covenant of quiet enjoyment. Instead, he continued to pay rent, thus leading the landlord to believe that he considered the lease to be valid and continuing. Cf. Brooks v.Rodgers, 99 Ala. 433, 12 So. 61 (1892) (holding that an agreement between landlord and tenant relating to a credit on rent subsequently accruing, an agreement that was executed after the tenant breached certain covenants in the lease, was an affirmance of the continuance of the lease and a waiver of the right to declare a forfeiture).
Forfeiture conditions in a lease may be waived by the party beneficially interested therein. See Hodge v. Joy, 207 Ala. 198, 92 So. 171
(1921). For example, a landlord, by continuing to accept rent from a tenant after the landlord has cause to declare a forfeiture of the lease, is generally deemed to have waived the right to declare a forfeiture. "`[R]eceipt of rents accruing after cause of forfeiture, without notice to the contrary, is a recognition of the continued existence of the lease, and a waiver of such forfeiture,'" see Welch v.Kiser, 668 So.2d 9, 10 (Ala.Civ.App. 1994) (quoting City Garage SalesCo. v. Ballenger, 214 Ala. 516, 518, 108 So. 257, 259 (1926)). By the same token, if a tenant takes no steps to exercise his option to terminate a lease and, instead, continues to pay rent and occupy the premises, then he has waived his right to claim a breach of the lease. Just as a landlord may waive a tenant's breach, see Commercial Union FireIns. Co. v. Parvin, 279 Ala. 645, 189 So.2d 330 (1966), a tenant may waive a landlord's breach. It stands to reason that if a landlord'saccepting rent, after becoming aware of a cause for forfeiture, constitutes the landlord's waiver of the forfeiture, then a tenant'spaying rent, after becoming aware of a cause for forfeiture, constitutes the tenant's waiver of the forfeiture.
In the present case, the tenant failed to notify the landlord that he considered the lease terminated because he was unable to use the property as a hairstyling salon; he also continued to pay rent during the entire time that the premises were unusable; and, further, he held over at the end of the lease term. The lease provision as to holding over states:
 "HOLDING OVER. Should the lessee continue to occupy the premises after the expiration of said term or after a forfeiture incurred then, except as otherwise provided in this paragraph, the Lessee shall continue as a tenant under the terms of this lease (except as to duration) from year to year, and each holding over period annually thereafter shall in like manner create and cause a similar extension of this lease from year to year. PROVIDED, HOWEVER that if the said Lessee continues to remain in the premises after the expiration of said term or after a forfeiture incurred, the Lessor, at any time, whether rent has been accepted by the Lessor or not, reserves the unqualified right, or option to notify the Lessee in writing of his election to terminate the lease or any extension thereof, said termination to be effective at the end of the calendar month in which said notice is given, unless less than ten days remain in said month, in which event the effective date of termination shall be the last day of the calendar month following the date on which notice is given."
Where a tenant holds over under a written lease the landlord may treat the tenant's continued occupancy as a tenancy for another year on the same terms. See Kyle *Page 551 v. Gadsden Hardware Supply Co., 200 Ala. 593, 76 So. 951 (1917).
Based on the factual distinctions between this case and Walker, as well as the legal authorities previously cited, we hold that the lease was voidable at the election of the tenant; that the tenant, by his conduct, waived the right to terminate the lease; that the tenant in fact reaffirmed the lease; and that the October 8, 1998, "Cancellation of Lease Agreement," containing the mutual release of claims by the parties, barred the tenant's claims. We therefore affirm the judgment of the circuit court.
AFFIRMED.
Monroe and Thompson, JJ., concur.
Robertson, P.J., and Yates, J., concur in the result.