MOORE, Judge.
David Daily appeals from a summary judgment entered by the Franklin Circuit Court (“the trial court”) in favor of U.S. Micro Powders, Inc. (“USMP”). We reverse.

Background

On November 6, 2006, Daily, as the lessor, entered into a “Mining Lease” (“the lease”) with USMP, as the lessee, of certain land located in Franklin County (“the leased property”). The lease provided, in pertinent part:
“4. Monthly Rent. On the fifteenth day of each calendar month following any calendar month included in the initial term of this Lease and in any renewal thereof, Lessee shall pay Lessor rent for the preceding calendar month in the amount of $1,000 per Block; provided, that the rent to be paid by Lessee for each such calendar month shall be reduced (but not below $0) by the total of all royalties paid by Lessee for Limestone removed from the [leased property] during that same calendar month, including but not limited to any prepaid royalties, and by any prepaid rent.
[[Image here]]
*812 “16. Termination For Cause.
“16.1. If Lessee shall fail to pay any sum due to Lessor under this Lease within ten days after Lessor shall have given written notice of such failure to Lessee, Lessor shall have the right to terminate this Lease by giving to Lessee written notice of Lessor’s intent to terminate this Lease....
“16.2. Upon the giving of any written notice of Lessor’s intent to terminate this Lease under Paragraph 16.1 above, Lessee’s rights under this Lease and operations on the [leased property] shall immediately cease and terminate.”
On October 23, 2008, Daily sued USMP and William Kidd seeking a judgment declaring the rights of the parties with respect to the leased property. Daily sought a judgment declaring that Kidd, acting as USMP’s agent, had fraudulently or deceitfully induced Daily to enter into the lease and that, as a result, the lease was voidable by Daily.[1] After the filing of Daily’s initial complaint, the parties maintained the status quo, with USMP remaining on the leased property and paying rent and Daily continuing to accept those rent payments.
On July 1, 2009, Daily filed an amended complaint alleging that, on June 15, 2009, USMP had failed to pay the rent due under the lease, that Daily had notified USMP of its failure, and that, on July 1, 2009, Daily had notified USMP that he was terminating the lease. As relief, Daily requested that the trial court declare that the lease had been effectively terminated by Daily. The evidence in the record establishes that, on June 15, 2009, Daily provided written notice to USMP of its failure to pay rent, that Daily allowed USMP an opportunity to cure the default, and that, on July 1, 2009, Daily notified USMP of his election to terminate the lease. The evidence also suggests that Daily returned to USMP those rent checks forwarded to him by USMP between July 1, 2009, and March 2010. USMP, however, continued in possession of the leased property.
In November 2010, although Daily previously had declined to accept USMP’s tender of rent checks to him, Daily requested that USMP forward to him the rent payments for some of the months that remained unpaid at that time, i.e., September, October, November, and December 2009 and January, February, and March 2010.[2] According to Daily, USMP refused to pay the rent for the requested months. From the record, however, it appears that USMP remitted and Daily accepted monthly rental payments beginning at some point in 2010 and continuing thereafter.
On February 25, 2011, USMP moved for a summary judgment, asserting that, since the filing of Daily’s complaint, as amended, Daily had accepted USMP’s performance, 1.e., the payment of rent, under the lease. Therefore, USMP asserted, “any supposed breach or event of default which previously occurred has now been waived and rendered moot by the subsequent course of conduct of the parties. Daily is now receiving and retaining the benefit of USMP’s payments under the lease, and cannot continue to claim that the lease does not exist, either at its inception based on fraud or at the point of the event of default or termination on non-payment.” USMP’s motion was supported by the affidavit of Hal Hughston III, the custodian/receiver for USMP, who attested that USMP was paying Daily the monthly rent *813 required under the lease; USMP also provided copies of canceled checks representing rent payments it had made to Daily after the filing of his declaratory-judgment complaint.
On March 15, 2011, Daily moved for a partial summary judgment in his favor for unpaid rent. Daily asserted in his supporting affidavit that USMP had attempted to pay rent for the months of September 2009 through March 2010 but that Daily had returned those rent checks to USMP or its agent. Thus, Daily asserted, he was entitled to a summary judgment in his favor for unpaid rents for the months of September 2009 through March 2010.
On April 21, 2011, after Daily and USMP had filed responses in opposition to the other’s summary-judgment motion and after the trial court had heard arguments on those competing motions, the trial court entered a summary judgment in favor of Daily, finding that the seven rent payments Daily requested in his summary-judgment motion were due and owing from USMP. As to USMP’s summary-judgment motion, the trial court found that
“the conduct and course of action of [Daily] subsequent to the filing of this action amounted to a voluntary waiver of both his fraud-based and contract-based action against [USMP]. [USMP’s] alleged failure to timely make the June 2009 payment under the subject lease, which was the basis for [Daily’s] amended complaint, was not mentioned in either [Daily’s] summary-judgment motion or his response to [USMP’s] summary-judgment motion. [Daily’s] complaint and amended complaint against [USMP are] accordingly dismissed with prejudice in their entirety; and the Court expressly finds that the subject lease agreement between the parties dated the 6th of November, 2006, is existent, viable, ... in full force and effect and both [Daily] and [USMP] are strictly bound [by] the terms thereof. Further, in that the Court has determined [USMP’s] motion for summary judgment is granted, the subject lease is therefore determined not to be voidable and/or terminable.”[3]
On May 31, 2011, Daily timely filed his notice of appeal; USMP has not cross-appealed.

Standard of Review

“ ‘ “We review the trial court’s grant or denial of a summary judgment motion de novo.” Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006) (citing Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006)). A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. If the movant meets this initial burden, the burden then shifts to the nonmovant to present “substantial evidence” of a genuine issue of material fact. Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see also § 12-21-12(d), Ala.Code 1975. In determining whether a genuine issue of material fact exists, this Court views the evidence in the light most favorable to the nonmov-ant and resolves all reasonable doubts in *814 favor of the nonmovant. Jones v. BP Oil Co., 632 So.2d 435, 436 (Ala.1993).’ ”
Harris v. Health Care Auth. of Huntsville, 6 So.3d 468, 472 (Ala.2008) (quoting McCutchen Go. v. Media Gen., Inc., 988 So.2d 998,1001 (Ala.2008)).

Analysis

The trial court did not consider the merits of Daily’s fraud-based and contract-based claims because it concluded that Daily had waived those claims by demanding and accepting rent payments during the pendency of his declaratory-judgment action with knowledge of his claims. In support of its summary-judgment motion, USMP established only that, after the filing of Daily’s amended complaint for a declaratory judgment, Daily requested and accepted rent payments from USMP under the lease. USMP asserted that Daily’s demand of past-due rents and his acceptance of the rent payments it submitted amounted to an election to affirm the lease and to proceed with performance of the lease and that he therefore waived his claims.
Daily does not deny that, after the filing of the declaratory-judgment action, he sought payment of past-due rents and accepted USMP’s tender of certain rent payments. He argues, however, that his acceptance of rent payments during the pendency of the declaratory-judgment action did not establish a voluntary and intentional waiver of his claims. See Horne v. TGM Assocs., L.P., 56 So.3d 615, 624 (Ala.2010) (recognizing that a “‘waiver consists of a “voluntary and intentional surrender or relinquishment of a known right” ’ ” (quoting Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 93 (Ala.2005), quoting in turn Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984))). Thus, we must determine whether, as a matter of law, Daily’s act of accepting rent payments after filing his declaratory-judgment action amounted to a waiver of his claims.
Alabama caselaw has held that
“a landlord, by continuing to accept rent from a tenant after the landlord has cause to declare a forfeiture of the lease, is generally deemed to have waived the right to declare a forfeiture. ‘ “[Receipt of rents accruing after cause of forfeiture, without notice to the contrary, is a recognition of the continued existence of the lease, and a waiver of such forfeiture,” ’ see Welch v. Kiser, 668 So.2d 9, 10 (Ala.Civ.App.1994) (quoting City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 518, 108 So. 257, 259 (1926)).”
Lucas v. Lyle, 807 So.2d 546, 550 (Ala.Civ.App.2001) (emphasis added), overruled on other grounds, Lucky Jacks Entmt. Ctr., LLC v. Jopat Bldg. Corp., 32 So.3d 565 (Ala.2009). The same rationale was expressed in Dusenberry v. First National Bank of Birmingham, 271 Ala. 207, 213-14, 122 So.2d 716, 721-22 (1959), in which our supreme court addressed a claim of undue influence, which it recognized as a species of fraud. 271 Ala. at 213, 122 So.2d at 721 (citing 3 Pomeroy’s Equity Jurisprudence §§ 964-65 (5th ed.)). In Dusenberry, our supreme court stated:
“ ‘A transaction impeachable at the time of its consummation, becomes unimpeachable if the party[,] with full knowledge or notice of all the material facts, does anything tantamount to a recognition of the contract as existing and binding, or which is inconsistent with its repudiation, or if he remains silent and abstains from impeaching it for a considerable time, so that the other party is reasonably induced to suppose the transaction is recognized, and is permitted to deal with the subject-matter under such belief’ ”
*815 271 Ala. at 214, 122 So.2d at 722 (quoting Dent v. Long, 90 Ala. 172, 176, 7 So. 640, 642 (1890)) (emphasis added). Thus, if Daily provided notice to USMP that, although he was continuing to accept rents, his acceptance of rents was not intended to affirm the continued existence of the lease, Daily did not waive his fraud-based and contract-based claims.
Although we find no Alabama case directly on point, the issue has been addressed in other jurisdictions. In Davidsohn v. Doyle, 108 Nev. 145, 825 P.2d 1227 (1992), a landlord filed a complaint seeking a judgment declaring that a commercial lease had been terminated for breach of the lease terms. 108 Nev. at 147, 825 P.2d at 1228. During the pendency of the declaratory-judgment action, the tenant remained on the leased premises and continued to pay rent, which the landlord accepted. Id. When both parties moved for a summary judgment, the trial court granted the tenant’s motion on, among other grounds, the basis that, by accepting rent from the tenant with knowledge of the alleged breach, the landlord had waived his right to terminate the lease. Id. The landlord appealed. Id.
In reversing the summary judgment, the Nevada Supreme Court stated:[4]
“In ruling as it did, the district court relied on the general rule that when a lessor accepts rent, with full knowledge of a breach by his lessee, the lessor waives his right to terminate the lease based upon that breach....
“[The landlord] urges this court to recognize an exception to the general rule based upon the protracted pen-dency of the action between the parties, the commercial nature of the subject lease, and the March 14, 1988, ‘notice of default’ communicated to [the tenant].
The principal Nevada case holding that a lessor waives his right to terminate a lease by accepting rent from the lessee is Sharp v. Twin Lakes Corp., 71 Nev. 162, 283 P.2d 611 (1955). In Sharp, a lessee sued its lessor for the return of deposit money which was held in escrow to ensure performance of the lease terms. The lessor counterclaimed for forfeiture of the lease based on numerous breaches by the lessee. We held that the lessor had waived his right to terminate the lease for breach by accepting rent without giving the lessee any ‘intimation that he regarded the lease as forfeited.’ 71 Nev. at 167, 283 P.2d at 613. Until filing the counterclaim, the lessor’s actions ‘affirmed the existence of the lease and recognized the lessee as his tenant.’ Id.
“In Sharp we were concerned about the lessor seeking to terminate the lease after lulling the lessee into believing that its breach of the terms of the lease would be overlooked. In the present case, [the tenant] cannot reasonably contend that [the landlord’s] actions led her to believe that any failure to properly maintain the leased premises would be excused. [The landlord] acted promptly after learning of the deteriorated condition of the buildings. After giving [the tenant] an opportunity to repair the property, [the landlord] pressed for termination of the lease. [The tenant] was aware of these efforts as she continued to pay rent for well over a year after [the landlord] brought suit. Thus, [the landlord] did not induce [the tenant] into believing the breach would be excused.”
108 Nev. at 148, 825 P.2d at 1229. The Nevada Supreme Court also found it significant that the lease at issue involved *816 commercial property and that the tenant was a sophisticated businesswoman and not a unsophisticated residential tenant. 108 Nev. at 149, 825 P.2d at 1229.
The Nevada Supreme Court further recognized that several other jurisdictions permit a lessor, under the appropriate circumstances, to accept rent without waiving the right to terminate the lease. Citing authority from Arizona, Idaho, and Colorado, the Nevada Supreme Court stated in Davidsohn that
“[tjhese states recognize the general rule that a landlord’s acceptance of rent after notice of a breach waives the right to terminate the lease based on that breach. However, when a lessor takes definite action to terminate a lease, and the lessee opposes the action and remains in possession, these jurisdictions allow the lessor to continue accepting rent from the lessee while pursuing termination. But see Woodland Theatres v. ABC Intermountain Theatres, 560 P.2d 700 (Utah 1977) (finding a waiver even though lessor initiated two actions to terminate lease).
“We agree with the reasoning of those cases that recognize as an exception to the general rule, a lessor’s right to accept rent after a breach by the lessee when the lessor timely expresses his intent to terminate the lease and the lessee nevertheless remains in possession ....
[[Image here]]
“Based upon our adoption of the exception to the general rule, as discussed above, we hold that [the landlord] did not waive his right to terminate the lease by accepting rental payments from [the tenant] after knowledge of the breach. [The landlord] timely pursued his action, and we cannot seriously doubt that [the tenant] was aware of [the landlord’s] intention to terminate the lease if repairs were not timely made. Although the first letter sent to [the tenant] was somewhat equivocal, the second letter and the initiation of the declaratory judgment action adequately notified [the tenant] that [the landlord] was seeking to terminate the lease because of the state of disrepair of the leased property. [The landlord’s] complaint about the condition of the premises appears well supported in the record. Therefore, [the landlord] may pursue his action for termination despite his acceptance of the rent tendered by [the tenant].”
108 Nev. at 149-50, 825 P.2d at 1229-30.
The posture of this case is strikingly similar to that of Davidsohn, supra, with the exception that, although Davidsohn addressed only a contract-based claim, Daily has asserted both a fraud-based claim and a contract-based claim. We conclude that the rationale of Davidsohn is equally applicable to both of Daily’s claims. See, e.g., Dusenberry, supra (holding that a claim of undue influence, a species of fraud, may be waived if the claimant acts in a manner inconsistent with his or her repudiation of the contract or permits the other party to deal with the subject matter of the dispute under the belief that the transaction has been “recognized”). Daily, the lessor, filed a declaratory-judgment action alleging fraudulent inducement and seeking a judgment declaring that, as a result, the lease was voidable. He later notified USMP that he considered USMP to be in breach of the lease for nonpayment of the rent, and, after allowing USMP an opportunity to cure the breach, Daily formally notified USMP that he intended to terminate the lease. Daily then amended his complaint to seek a judgment declaring that the lease had been terminated as a result of the breach. Daily also notified USMP of his intent to terminate *817 the lease on other occasions, i.e., in August 2009, November 2009, and January 2010. USMP, however, remained on the leased property.
Thus, from the initial filing of the declaratory-judgment action, USMP had notice that Daily was asserting and pursuing fraud-based and contract-based claims that challenged the existence of the lease and the continued enforceability of the lease. Even though Daily accepted rents during the pendency of his declaratory-judgment action, he continued to maintain that action and, thus, continued to pursue his claims against USMP. As recognized by the Nevada Supreme Court in Davidsohn, supra: “Irrespective of who prevails in litigation, the lessee will be liable for rent incurred during the period of possession of the demised premises.... Requiring a lessor to forego rental payments until resolution of a dispute may be unduly burdensome, as in the instant case involving a commercial lease with a substantial monthly rental.” 108 Nev. at 149, 825 P.2d at 1229-80. We also note that, like the tenant in David-sohn, supra, USMP is not an unsophisticated residential tenant but is a business entity engaged in the mining industry, which regularly involves the leasing of property.
Based on the foregoing, we conclude that USMP could not have reasonably believed that Daily’s acceptance of the rent after the filing of his declaratory-judgment action was intended to affirm the lease and that Daily no longer intended to pursue his legal claims. As a result, we conclude that the timely filing and maintenance of Daily’s declaratory-judgment action was sufficient notice to USMP of his claims and that, therefore, Daily’s acceptance of rent during the pendency of that action did not amount to a waiver of his claims. Lucas v. Lyle, supra; and Dusenberry, supra.
“The principles of law applicable to reviewing a summary-judgment motion are well settled. To grant such a motion, the judge must determine that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law.” Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952 (Ala.2004). Because Daily did not waive his fraud-based and contract-based claims and those claims remain unadjudi-cated and unaddressed, we conclude that genuine issues of material fact exist and that the summary judgment in favor of USMP must be reversed.
Daily also seeks appellate review of a stay order that is not contained in the record but that he asserts was entered by the trial court on July 20, 2011. The propriety of that order cannot be reviewed in this appeal. Jurisdiction over Daily’s appeal vested in this court on May 31, 2011, when Daily filed his notice of appeal. Daily did not file a notice of appeal or seek mandamus relief from that July 20, 2011, stay order, which was entered after this court’s jurisdiction vested and which relates to issues not before this court in this appeal or in a related or consolidated action.[5] As a result, this court has no appellate jurisdiction to review the propriety of that order. See, e.g., Searle v. Vinson, 42 So.3d 767, 771 (Ala.Civ.App.2010) (“ ‘Furthermore, “while an appeal is pending, the trial court ‘can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court.’ ” ’ ” (quoting Johnson v. Willis, 893 So.2d 1138, 1141 (Ala. *818 2004), quoting in turn other cases) (emphasis added)); and Landry v. Landry, 42 So.3d 755, 757-58 (Ala.Civ.App.2009)
(recognizing that an appellant’s failure to properly file a notice of appeal as to a particular judgment prevents an appellate court from obtaining jurisdiction to review that judgment). Because the July 2011 order is not before this court, we express no opinion as to its propriety.
We reverse the trial court’s summary judgment entered in favor of USMP, and we remand the cause to the trial court for further proceedings consistent with this opinion. Because of our resolution of the above issues, we pretermit discussion of Daily’s other issues.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Daily sued Kidd only in his capacity as USMP’s agent.

. Daily did not request rent payments for June, July, or August 2009.

. The trial court stated that its order disposed of fewer than all the claims or parties in the case, that there was no just reason for delay, and that its order was, therefore, a final judgment as to the parties and issues addressed therein. See Rule 54(b), Ala. R. Civ. P.

. Because of the dearth of caselaw on this issue in Alabama, we quote extensively from Davidsohn v. Doyle to fully establish the rationale of that court.

. USMP did not appeal or cross-appeal from that portion of the trial court's judgment that was adverse to it, i.e., that portion ordering it to pay past-due rents to Daily. Thus, this court also did not acquire jurisdiction over that aspect of the trial court's April 21, 2011, judgment as a result of an appeal or a cross-appeal filed by USMP.